LSB FINANCIAL SERVICES, INC., Plaintiff v. BRENDA S. HARRISON AND J.C. BRADFORD & CO., Defendants

No. COA00-515

(Filed 3 July 2001)

**1. Appeal and Error— appealability—order granting application to compel arbitration**

Although there is no right of appeal from an order granting an application to compel arbitration, the Court of Appeals exercised its discretionary authority under Rule 2 to grant the writ of certiorari and address the appeal on the merits.

**2. Arbitration and Mediation— federal statutes—transaction affecting interstate commerce**

Federal arbitration statutes apply to this case instead of state arbitration statutes because the securities transactions involved affect interstate commerce.

**3. Arbitration and Mediation— securities transactions—U-4 form agreement—third party beneficiary—equitable estoppel**

The trial court did not err in an action alleging that defendant violated the noncompete clause contained in her employment contract with plaintiff by staying court proceedings pending arbitration and by compelling plaintiff to submit to binding arbitration based on the fact that plaintiff is bound by the U-4 form agreement between defendant and UVEST compelling the arbitration of employment contract disputes even though plaintiff did not sign the agreement to arbitrate, because: (1) plaintiff was a third party beneficiary receiving the direct benefit of the contract between defendant and UVEST through commissions earned; (2) equitable estoppel prevents plaintiff from asserting that the lack of its signature on a written contract precludes enforcement of the contract's arbitration clause when it consistently maintained that other provisions of the same contract should be enforced to benefit it; (3) plaintiff required defendant to sign the U-4 form so that plaintiff would be in a lawful position to benefit from the business of securities transactions and so that defendant would be eligible to serve as a securities broker for plaintiff; and (4) the issue of the noncompete clause in the employment contract that gave rise to the dispute does arise out of defendant's employment as a securities broker.

LSB FIN. SERVS., INC. v. HARRISON

[144 N.C. App. 542 (2001)]

Appeal by plaintiff from judgment entered 16 February 2000 by Judge Mark E. Klass in Superior Court, Davidson County. Heard in the Court of Appeals 15 March 2001.

*Brinkley Walser, P.L.L.C., by Charles H. McGirt, for plaintiff-appellant.*

*Smith Helms Mulliss & Moore, L.L.P., by J. Donald Cowan, Jr., for defendants-appellees.*

TIMMONS-GOODSON, Judge.

LSB Financial Services, Inc. ("plaintiff") appeals the order of the trial court staying court proceedings pending arbitration and compelling plaintiff to submit to binding arbitration. We affirm.

The present action stems from a suit instituted by plaintiff against Brenda S. Harrison ("defendant") and J.C. Bradford & Co. ("Bradford" or, together, "defendants"), alleging that defendant violated the noncompete clause contained in her employment contract with plaintiff. Defendant was an employee of Lexington State Bank from 1979 to 1998. She worked as a securities broker for plaintiff, the bank's financial services subsidiary, for the last two years of her employment. Until 1999, federal law prohibited banks from being members of the National Association of Securities Dealers, Inc. ("NASD"). Due to this prohibition, banks were not allowed to engage in the business of securities transactions unless they partnered with an NASD member. Plaintiff did partner with a NASD member, Liberty Securities Corporation ("Liberty") in 1996, and as such, qualified employees of plaintiff were allowed to engage in securities brokering. After about one year, plaintiff chose to replace their Liberty partnership with a partnership with Investment Services ("UVEST"), another NASD member.

As part of the arrangement, UVEST and plaintiff maintained employees, such as defendant, called "dual employees," as they worked under the supervision and control of both plaintiff and UVEST. The arrangement was such that plaintiff paid the employees, while UVEST and plaintiff shared the profits garnered from the dual employees' securities work.

While plaintiff was not allowed to become a NASD member, the dual employees were required to become NASD members in order to qualify for employment as securities brokers. In order to become a

NASD member, applicants, including defendant, were required to complete and sign a Uniform Application for Securities Industry Registration Form ("U-4 Form"). The U-4 Form, which is a standardized application form, includes a provision for submitting disputes between applicable people and organizations to arbitration.

The noncompete clause in the employment contract between plaintiff and defendant reads as follows:

During Employee's employment hereunder and continuing thereafter for a period of one year, Employee shall not directly or indirectly compete or attempt to compete with the said Broker/Dealer or LSBFS Program within a 50 mile radius of any Service Center location or locations to which the Employee has been assigned during the term hereof, by (i) doing business with, interfering in the contracts or relationships with or soliciting, directing or taking away the business or patronage of the then existing or prospective clients, customers or accounts of the said Program, The Broker/Dealer LSBFS or LSBFS's affiliates or (ii) recruiting or inducing any employee of LSBFS, the Broker/Dealer engaged by LSBFS, or affiliates of LSBFS to terminate or otherwise cease his employment relationship with said Broker/Dealer or LSBFS or such affiliates.

Defendant voluntarily terminated her employment with plaintiff on 18 August 1998 and began working as a broker with Bradford, another NASD member. Several customers left plaintiff and began conducting business transactions with defendants. Plaintiff thereafter initiated a complaint against defendants, alleging a violation of the covenant not to compete and other provisions of the employment contract. In addition to seeking damages for breach of contract, plaintiff alleged willful or malicious interference with contract, libel and slander, unfair and deceptive trade practices, punitive damages and sought injunctive relief. A temporary restraining order was issued at the time of the initiation of the action. Defendant filed an answer on 24 September 1999 along with a motion to compel arbitration and stay judicial proceedings. On 10 December 1999, defendant filed an amended motion to compel arbitration and stay proceedings pending arbitration pursuant to sections 1-567.2 and 1-567.3 of the North Carolina General Statutes. On 27 January 2000, defendant filed an amended motion to compel arbitration and stay proceedings pending arbitration pursuant to the Federal Arbitration Act ("FAA") 9 U.S.C. § 2 and § 3.

On 16 February 2000, the trial court entered an order staying proceedings pending arbitration and compelling plaintiff to arbitrate all matters alleged in the complaint. The court found that the disagreement between plaintiff and defendant should be settled by binding arbitration because plaintiff was a third party beneficiary of the contract between defendant and UVEST, and because the contract between defendant and UVEST mandated binding arbitration between certain parties in the event of a dispute. From this order, plaintiff appeals. For the following reasons, we affirm the trial court decision.

---

[1] A threshold question before analyzing the decisions of the trial court in this case is whether we should hear this appeal. Citing N.C. R. App. P. 21, plaintiff has moved the Court to grant its petition for certiorari and address the appeal on the merits. The petition for writ of certiorari filed by plaintiff correctly asserts that North Carolina General Statutes section 1-567.18 allows an appeal to be taken from an Order *denying* an application to compel arbitration under section 1-567.3, but the statute does not provide for an appeal from an Order *granting* an application to compel arbitration. The trial court entered an order compelling arbitration and, as such, there is no appeal of right. Pursuant to our authority under Rule 2, we grant the writ of certiorari and address the appeal on the merits.

[2] A second threshold question before analyzing the decisions of the trial court in this case is whether state or federal law governs. Both state and federal statutes regulate arbitration. The FAA provides, in pertinent part, as follows:

> A written . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable . . .

9 U.S.C. § 2 (2000).

Similarly, the applicable North Carolina's statutory provision regarding the validity of arbitration agreements reads as follows:

> (a) Two or more parties may agree in writing to submit to arbitration any controversy existing between them at the time of the

agreement, or they may include in a written contract a provision for the settlement by arbitration of any controversy thereafter arising between them relating to such contract or the failure or refusal to perform the whole or any part thereof. Such agreement or provision shall be valid, enforceable, and irrevocable except with the consent of all the parties, without regard to the justiciable character of the controversy.

N.C. Gen. Stat. § 1-567.2 (1999).

The essential distinction, for our purposes, between the federal and state arbitration statutes, is that the FAA governs contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2. For the FAA to apply, then, the contract must affect interstate commerce. *See e.g. Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 130 L. Ed. 2d 753 (1995). " 'Commerce' in its broadest sense comprehends intercourse for the purposes of trade in any form." *Johnson v. Insurance Co.*, 300 N.C. 247, 261, 266 S.E.2d 610, 620 (1980). The FAA defines commerce broadly as "commerce among the several States . . . , or in the District of Columbia, . . . or between the District of Columbia and any state." 9 U.S.C. § 1.

Previous decisions strongly support the conclusion that this dispute involves commerce in such a way that the FAA was properly invoked by the trial court, as "[b]rokerage agreements . . . fall within the broad construction of the term 'involving commerce' under section 2 of the FAA." *Smith Barney, Inc. v. Bardolph*, 131 N.C. App. 810, 813, 509 S.E.2d 255, 257 (1998). Even more specifically, the U-4 Form has been held by the United States Supreme Court to be a contract that involves commerce. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 114 L. Ed. 2d 26 (1991).

We conclude, therefore, that the securities transactions involved here affect interstate commerce and the FAA is applicable.

[3] We turn our attention, then, to the dispositive issue on appeal of whether plaintiff is bound by the agreement between defendant and UVEST compelling the arbitration of employment contract disputes when plaintiff did not sign the agreement to arbitrate. While neither party argues that an agreement to arbitrate is contained in the employment contract between plaintiff and defendant, defendant asserts that the fact that plaintiff and defendant do not have a written and signed contract directly requiring arbitration does not mean that

there is not an enforceable agreement to arbitrate between the two parties. We agree.

Arbitration of a claim is available only when the parties involved agree to arbitration by contract. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 4 L. Ed. 2d 1409 (1960). Whether parties must arbitrate a dispute is for the courts to decide on the basis of the contract. *Id.* While it is true that 9 U.S.C. § 2 overtly and clearly mandates that arbitration can only be compelled if there is a "written . . . contract . . . to settle by arbitration," and "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," *United Steelworkers of America*, 363 U.S. at 582, 4 L. Ed. 2d at 1417, "a variety of nonsignatories of arbitration agreements have been held to be bound by such agreements under ordinary common law contract and agency principles." *In re Prudential Ins. Co. of America Litigation*, 133 F.3d 225, 229 (3rd Cir. 1998).

While *In re Prudential* is a decision by the Third Circuit, it is instructive in our decision. In *In re Prudential*, Prudential was sued by former agents and Prudential moved to compel arbitration. Prudential was not a signatory to the U-4 Form which was used in the case, but the plaintiffs had signed the form. Rather, Prudential was a third party beneficiary to the U-4 Form agreement, as found by the Court. In its opinion, the Court articulated some broad principles regarding the U-4 Form, the NASD, and third party beneficiaries:

> [I]t is clear from the text and purpose of Form U-4, that the parties to the agreement intended to benefit such non-signatory, third parties as Prudential. While Form U-4 is only an agreement between the NASD and the applicant, it was adopted as a broader effort by self-regulatory organizations, including the NASD, to regulate the securities industry (Citations omitted). The intention, as Form U-4 unambiguously indicates, was not limited to arbitrating disputes between the NASD and the applicant or member "firms" explicitly recognized in the text. Rather, the arbitration agreement and the NASD Code of Arbitration establish certain classes of individuals—member firms of the NASD, customers, and so on—who would benefit from the applicant's agreement with the NASD. The applicant, in return, would become a registered broker with the NASD and could properly conduct business under the federal securities laws. Therefore, we have no doubts that the parties to Form U-4 unequivocally

intended that each applicant would submit to arbitration against non-signatory third parties such as Prudential.

*Id.* at 230.

We accept the propositions set forth above. After all, in both *In re Prudential* and the case at bar, the third party beneficiary was a third party beneficiary because they were receiving the direct benefit of the contract.[1] Accepting the propositions set forth above, however, still leaves us with another question. The Court in *In re Prudential* held that a U-4 Form signator and a third party beneficiary to the U-4 Form can be compelled to arbitrate disputes under the authority of the NASD. In *In re Prudential*, however, it was the third party beneficiary that was trying to compel the actual signator to the U-4 Form to arbitrate, whereas in the case *sub judice*, the facts are reversed in that the U-4 Form signator wants to compel a third party beneficiary to arbitrate under the conditions of the U-4 Form. Defendant argues that through commissions earned, "LSB reaped the benefits of the U-4 Form . . . [and] must not be permitted to avoid its burdens." Defendant's position is supported by the fact that our case law establishes that "[i]f the third party is an intended beneficiary, the law implies privity of contract." *Coastal Leasing Corp. v. O'Neal*, 103 N.C. App. 230, 236, 405 S.E.2d 208, 212 (1991). Defendant's position is also supported by the doctrine of equitable estoppel, a doctrine which prevents a party from asserting a right that "he otherwise would have had against another" when his conduct would make the assertion of those rights contrary to equity. *In re Varat Enterprises, Inc.* 81 F.3d 1310, 1317 (4th Cir. 1996). In the context of arbitration, the doctrine of equitable estoppel may be used to stop a party from asserting that, for example, "the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the

---

1. "To establish a claim based on the third party beneficiary contract doctrine, a complaint's allegations must show: (1) the existence of a contract between two other persons; (2) that the contract was valid and enforceable; and (3) that the contract was entered into for his direct, and not incidental, benefit." *Leasing Corp. v. Miller*, 45 N.C. App. 400, 405-6, 263 S.E.2d 313, 317 (1980). Plaintiff directed defendant to enter into the U-4 Form contract in order to directly benefit plaintiff. The trial court properly found plaintiff to be a third party beneficiary to the contract between defendant and UVEST. Other case law supports the proposition that in the particular factual scenario as set out in the case at bar, plaintiff would be found to be a third party beneficiary. *See e.g. Seus v. John Nuveen & Co., Inc.*, 1997 WL 325792 at 4 (E.D. Pa. 1997) (holding the employer of a signer/submitter of a U-4 Form is a third-party beneficiary; "Nuveen is an intended third-party beneficiary who may enforce the Form U-4 arbitration agreement."), *aff'd*, 146 F.3d 175 (3rd Cir. 1998).

same contract should be enforced to benefit him." *Inter. Paper v. Schwabedissen Maschinen & Anlagen*, 206 F.3d 411, 418 (4th Cir. 2000).

In the case at bar, plaintiff has maintained that other provisions of the U-4 Form should be enforced to benefit them. Indeed, plaintiff required defendant to sign the U-4 Form so that plaintiff would be in a lawful position to benefit from the business of securities transactions. We agree, therefore, with defendant's argument that "LSB reaped the benefits of the U-4 Form in terms of commissions earned [so] it must not be permitted to avoid its burdens." Defendant's argument that plaintiff was properly compelled to arbitrate is further bolstered by the fact that defendant was an agent of plaintiff and plaintiff instructed defendant to submit the U-4 Form in order to be eligible to serve as a securities broker for plaintiff. "It is well established in the federal courts that an arbitration agreement may be enforced by *or against* a nonsignatory party under traditional principles of agency or contract law." *Stone v. Pennsylvania Merchant Group, Ltd.*, 949 F. Supp. 316, 320 (E.D. Pa. 1996) (emphasis added). Plaintiff partnered with Liberty and then UVEST, two NASD members, for the sole purpose of allowing plaintiff's employees to sell securities for the financial gain of plaintiff. As a dual employee of plaintiff and UVEST, defendant was required to become a member of NASD and to submit a U-4 Form to NASD, and, as such, agreed to abide by the NASD rules and regulations. Among these regulations was the requirement that certain disputes be submitted to arbitration. The NASD Code of Arbitration requires arbitration of suits between "an NASD member against a person associated with an NASD member." A "person associated with an NASD member" is defined by NASD By-laws, and includes "a . . . partner . . . of a member." Because plaintiff and UVEST were sharing profits on commissions earned by their joint employees, the trial court properly concluded that plaintiff is a "person associated with an NASD member." Sharing profits, after all, is prima facie evidence of the existence of a partnership. *Wilder v. Hobson*, 101 N.C. App. 199, 398 S.E.2d 625 (1990).

The mere fact that plaintiff is associated with an NASD member, however, does not mean that it should be bound by the arbitration agreement to arbitrate any given dispute that may arise. Instead, the NASD Code of Arbitration states that issues "arising out of or in connection with the business of any member" and "arising out of the employment . . . of associated person(s) with any member" are among the issues that are arbitrable. As defendant points out in her brief, the

ARCHER v. ROCKINGHAM CTY.

[144 N.C. App. 550 (2001)]

issue of the noncompete clause in the employment contract that gave rise to this dispute does "arise out of" the defendant's employment as a securities broker. The underlying dispute, after all, is about whether defendant, a securities broker who works for plaintiff, is allowed to transfer her skills and efforts to work as a securities broker for a competing business. Similar disputes have previously been subject to mandatory arbitration by federal courts. *See e.g. Merrill Lynch, Pierce, Fenner & Smith v. Schwartz*, 991 F. Supp. 1480 (M.D. Ga. 1998) (in which the case is subject to mandatory binding arbitration pursuant to the NASD when noncompete clause is allegedly breached).

Finding no error in the trial court's decision to stay court proceedings and to compel the plaintiff to submit to mandatory arbitration, the decision of the trial court is affirmed.

Affirmed.

Judges MARTIN and TYSON concur.