MICHAEL J. PRESSLER, Plaintiff-Appellee v. DUKE UNIVERSITY and JOHN F. BURNESS, Defendants-Appellants

No. COA08-859

(Filed 1 September 2009)

**1. Appeal and Error— appealability—interlocutory order— arbitration—substantial right**

An order denying arbitration is immediately appealable because it involves a substantial right which may be lost if appeal is delayed.

**2. Arbitration and Mediation— motion to stay proceedings denied—rescission—mutual release**

The trial court did not err by denying defendants' motion to stay proceedings against defendants for slander and libel pending arbitration because the parties had stated in a release agreement their mutual intent that the release fully and finally resolved their disputes and that all earlier agreements be cancelled. Under either a theory of rescission or mutual release, plaintiff was not bound to resolve his dispute by arbitration with defendants.

Appeal by defendants from order entered 23 April 2008 by Judge Howard E. Manning, Jr., in Durham County Superior Court. Heard in the Court of Appeals 14 January 2009.

*Twiggs, Beskind, Strickland & Rabenau, P.A., by Jerome P. Trehy, Jr., Donald R. Strickland, and Jesse H. Rigsby, IV, for plaintiff-appellee.*

*Fulbright & Jaworski L.L.P., by John M. Simpson, and Cranfill, Sumner & Hartzog, L.L.P., by Dan M. Hartzog, for defendants-appellants.*

CALABRIA, Judge.

Duke University ("Duke") and John F. Burness ("Burness"), Senior Vice President for Public Affairs and Governmental Relations at Duke (collectively "defendants"), appeal the trial court's order denying their motion to stay proceedings pending arbitration. The trial court ruled that Michael J. Pressler's ("plaintiff") obligation to arbitrate his claims against defendants for slander and libel was voided by the mutual release and settlement agreement which was signed by both parties prior to commencement of the litigation. We affirm the trial court.

In 1990, Duke hired plaintiff as head coach of Duke's men's lacrosse team ("Duke lacrosse team") and, by annual renewal of his contract with Duke, he was continuously employed as head coach until 2006. In June 2005, plaintiff renewed his employment contract with Duke for a period of three years, from 1 June 2005 to 30 June 2008. The contract stated that his employment was "subject to the policies and regulations of Duke University as may exist from time to time." This provision incorporated by reference the Duke Dispute Resolution Policy ("the policy"), which provided that all disputes that arose from plaintiff's employment.would be subject to arbitration.

The policy states:

Any claim arising out of or relating to employment policies shall be settled in accordance with this procedure. The arbitration step of this procedure shall be governed by the United States Arbitration Act. Both the staff member and Duke are required to utilize this procedure to resolve disagreements falling within the scope of this procedure.

The provision of the policy entitled "Scope" establishes that the policy "applies to any application, meaning or interpretation of personnel policies or procedures as they affect work activities. Any claim based in whole or in part on federal, state or local laws whether statutory or common law shall be addressed through this procedure."

The policy further states, in relevant part, as follows:

> The provisions of this dispute resolution procedure shall be deemed to be the entire agreement to arbitrate between the parties and shall supersede and void any other agreement or rules, which are materially inconsistent. Neither the arbitrator nor the American Arbitration Association shall have the authority to add to, subtract from, or otherwise modify Duke policy, including but not limited to, this Dispute Resolution Procedure.

In March 2006, the Duke lacrosse team was the subject of widely publicized allegations. At Duke's request, plaintiff resigned from his position as head coach of the Duke lacrosse team. After a series of negotiations, the parties resolved their dispute regarding the termination of plaintiff's employment by entry of a settlement. On 21 March 2007, the parties entered into a "Mutual Release and Settlement Agreement" ("the mutual release"), which states, in relevant part:

> This agreement is entered into . . . for the purpose of clarifying the conditions of Pressler's separation from employment . . . and in order to finally, fully, and amicably resolve all issues and controversies arising out of the termination of said employment such that the parties may put all such matters behind them for their mutual benefit.
>
> . . .
>
> Whereas,. . . Pressler and Duke wish to cancel all earlier agreements and reach a final settlement and resolution of all matters regarding Pressler's separation from employment with Duke . . .;
>
> NOW, THEREFORE, Pressler and Duke agree as follows:
>
> 1. Any obligations of the parties arising from the 2005 Employment Contract, and/or the previous agreements of the parties regarding separation of employment that are remaining and unfulfilled as of the execution of this Agreement are extinguished, cancelled and declared void.
>
> . . .
>
> 4. Duke and Pressler agree that neither they nor their agents, principals or representatives will make disparaging or defamatory comments regarding the other party, it being the intent of the parties that both Duke and Pressler will comment where

possible, favorably one upon the other and if inquiry is made, each shall indicate that after difficult circumstances the parties were able to amicably resolve the circumstances of separation.

. . .

8. Duke and Pressler agree that this Mutual Release and Settlement Agreement is the final agreement between them as to his employment with Duke, his separation from employment with Duke, and any other issue arising there from or relating thereto.

9. Duke and Pressler acknowledge that they enter into this agreement voluntarily and with the full opportunity for the advice of counsel.

None of the terms in the mutual release provided for arbitration of any claims that arose after the effective date of the mutual release.

On 23 January 2008, plaintiff filed a complaint against defendants alleging slander and libel. The allegations contained in the complaint were that Burness, as Senior Vice President for Public Affairs and Government Relations at Duke, "knowingly made false, defamatory and slanderous statements about [plaintiff] to a reporter, statements that were then published to the public on 9 April 2007 in Newsday and later posted on a website, www.newsday.com." Plaintiff also alleged defendants made a false, defamatory and slanderous statement about plaintiffs employment to The Associated Press on 7 June 2007.

On 11 March 2008, defendants moved to stay proceedings pending arbitration or, alternatively, to dismiss for lack of subject matter jurisdiction or improper venue. Defendants contend plaintiffs claims are subject to the arbitration agreement contained in the policy.

On 23 April 2008, the trial court denied defendants motion to stay proceedings pending arbitration on the basis that "any obligation of Plaintiff to arbitrate any claims alleged against the defendants in this lawsuit is extinguished, cancelled and voided by the Mutual Release and Settlement Agreement . . . ." Defendants appeal.

## I. Interlocutory Appeal

[1] Defendants appeal an interlocutory order. "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. Durham*, 231 N.C. 357, 362, 57S.E.2d 377, 381 (1950).

Appeal of an interlocutory order is appropriate under two circumstances:

> First, the trial court may certify that there is no just reason to delay the appeal after it enters a final judgment as to fewer than all of the claims or parties in an action. N.C.G.S. 1A-1, Rule 54(b) [2007]. Second, a party may appeal an interlocutory order that affects some substantial right claimed by the appellant and will work an injury to him if not corrected before an appeal from the final judgment.

*Dep't of Transp. v. Rowe*, 351 N.C. 172, 174-75, 521 S.E.2d 707, 709 (1999) (quoting *Veazey*, 231 N.C. at 362, 57 S.E.2d at 381). This Court has previously held that "an order denying arbitration is immediately appealable because it involves a substantial right, the right to arbitrate claims, which might be lost if appeal is delayed." *Martin v. Vance*, 133 N.C. App. 116, 119, 514 S.E.2d 306, 308 (1999). Pursuant to *Martin,* we review defendants interlocutory appeal.

## II. Standard of Review for Motion for Stay of Arbitration

In *Raspet v. Buck*, this Court established the standard of review for arbitration cases as follows:

> The question of whether a dispute is subject to arbitration is an issue for judicial determination. A trial courts conclusion as to whether a particular dispute is subject to arbitration is a conclusion of law, reviewable *de novo* by the appellate court. [The determination of] [w]hether a dispute is subject to arbitration involves a two pronged analysis; the court must ascertain both (1) whether the parties had a valid agreement to arbitrate, and also (2) whether "the specific dispute falls within the substantive scope of that agreement."

147 N.C. App. 133, 136, 554 S.E.2d 676, 678 (2001)(internal citations and quotations omitted).

> The trial court's findings regarding the existence of an arbitration agreement are conclusive on appeal where supported by competent evidence, even where the evidence might have supported findings to the contrary. Accordingly, upon appellate review, we must determine whether there is evidence in the record supporting the trial courts findings of fact and if so, whether these findings of fact in turn support the conclusion that there was no agreement to arbitrate.

*Sciolino v. TD Waterhouse Investor Servs., Inc.*, 149 N.C. App. 642, 645, 562 S.E.2d 64, 66 (2002).

### III. Arbitration Agreement and Mutual Release

[2] Defendants argue the policy constitutes a valid and enforceable arbitration agreement which survived both plaintiff's separation from employment and the execution of the mutual release. Plaintiff does not contest that the policy contains a valid and enforceable arbitration agreement, but argues any agreement contained in the policy was extinguished by the mutual release. It must therefore be determined whether the mutual release extinguished any prior agreements which provided for arbitration. "Before a dispute can be settled by arbitration, there must first exist a valid agreement to arbitrate. As the moving party, defendants bear the burden of demonstrating that the parties mutually agreed to arbitrate their dispute." *Sciolino v. TD Waterhouse Investor Servs., Inc.*, 149 N.C. App. 642, 645, 562 S.E.2d 64, 66 (2002) (internal citations omitted). Thus, defendants have the burden of showing that there remains a mutual agreement to arbitrate the dispute, even after entry of the mutual release.

Defendants argue that

Pressler and Duke are parties to a valid and enforceable arbitration agreement that survives Pressler's separation from employment and that survives the execution of the Mutual Release and Settlement Agreement. The subject matter of Pressler's defamation claims are about Pressler's employment at Duke. The arbitration agreement covers Pressler's defamation claims against Duke and Burness because those statement[s] are about his employment. The Mutual Release and Settlement Agreement did not express any intent to avoid the requirement to arbitrate claims arising out of Pressler's employment, and there is no evidence of the parties' intent to do so.

Defendants argue at length regarding the applicability of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16 (2006), to the parties' prior arbitration agreements. According to defendants, if the FAA applies, "[f]ederal policy favors arbitration agreements." As to interpretation of the parties' agreement, defendants argue that "[t]he United States Supreme Court has explained that under the FAA, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation o waiver, delay, or a like defense to arbitrability.' " *Moses H. Cone Mem'l Hosp. v.*

*Mercury Constr. Corp.*, 460 U.S. 1,24-25, 74 L. Ed. 2d 765, 785 (1983).
"To that end, the 'heavy presumption of arbitrability requires that
when the scope of the arbitration clause is open to question, a court
must decide the question in favor of arbitration.' " *Am. Recovery
Corp.v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 92 (4th Cir.
1996) (quoting *Peoples Sec. Life Ins. Co. v. Monumental Life Ins.
Co.*, 867 F.2d 809, 812 (4th Cir. 1989).

Defendants also note that many prior cases in "federal and state
courts in North Carolina have upheld the validity and enforce ability
of arbitration agreements between Duke and its exempt and nonex-
empt employees." However, the question here is not whether Duke
and Pressler ever had a valid, enforceable arbitration agreement.
There is no dispute that prior to the mutual release, they did have
such an agreement. The issue is whether the mutual release
rescinded the arbitration agreement.

Despite the policy of construing any doubts regarding an arbitra-
tion agreement in favor of arbitration, here there is no doubt or ques-
tion regarding the language of the mutual release. The parties clearly
stated their mutual intent thăt the mutual release fully and finally
resolve their disputes and that "*all earlier agreements*" be cancelled
(emphasis added). Defendants essentially argue that when the mutual
release referred to "all earlier agreements," this did not really mean
*all* earlier agreements, as the mutual release did not specifically men-
tion the Dispute Resolution Policy, but addressed only "[a]ny obliga-
tions of the parties arising from the 2005 Employment Contract,
and/or the previous agreements of the parties regarding separation of
employment." Defendants contend that "Pressler's obligation to arbi-
trate does not arise from the 2005 Employment Agreement or any pre-
vious agreements of the parties regarding Pressler's separation of
employment. Rather, Pressler's obligation to arbitrate arises from  the
[policy]." According to defendants, the policy constitutes "the entire
agreement to arbitrate between the parties" with respect to the
subject of arbitration. However, plaintiff would not have  been sub-
ject to the policy but for the 2005 Employment Contract, in which
plaintiff agreed his employment was subject to the policy. The mutual
release addresses "all earlier agreements," and whether the policy
was a part of the 2005 Employment Contract or not, surely it was an
"earlier agreement" between the parties which would be encom-
passed by the term "all."

In effect, this was an agreement of rescission under which
each party agreed to discharge all of the other party's remaining

duties under the existing contracts, including the duty to arbitrate. It could also be characterized as a mutual release, consistent with the title of the document, "Mutual Release and Settlement Agreement." There was no term in the mutual release that provided for arbitration of any claims that arose after the effective date of the mutual release; thus, the parties abandoned arbitration as a means of future dispute resolution. *See Bokunewicz v. Purolator Prods., Inc.*, 907 F.2d 1396, 1400 (3d Cir. 1990). Finally, since the parties declared the prior agreements, which incorporated by implication the mutual release to arbitrate, "void," the mutual release to arbitrate was of no legal effect.

Plaintiff's claims against defendants arose from alleged defamatory and libelous actions by defendants in June 2007, after the execution of the mutual release. Therefore, under either a theory of agreement of rescission or a theory of mutual release, plaintiff is not bound to resolve his dispute by arbitration with defendants. Plaintiff's proceedings in litigation are not subject to a stay. We affirm the trial court's interlocutory order denying defendants' motion to stay proceedings pending arbitration.

Affirmed.

Judges ELMORE and STROUD concur.