IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-95

No. COA20-313

Filed 6 April 2021

Mecklenburg County, No. 16 CVS 10961

GEORGE W. JACKSON, on behalf of himself and others similarly situated, Third-Party Plaintiff,

v.

HOME DEPOT, U.S.A., INC. and CAROLINA WATER SYSTEMS, INC., Third-Party Defendants.

Appeal by third-party defendant Home Depot, U.S.A., Inc., from order entered 21 October 2019 by Judge Forrest D. Bridges in Mecklenburg County Superior Court. Heard in the Court of Appeals 10 March 2021.

*Whitfield Bryson LLP, by Daniel K. Bryson, Scott C. Harris, and J. Hunter Bryson, for third-party plaintiff-appellee.*

*Erwin, Bishop, Capitano, & Moss, P.A., by Lex M. Erwin, and King & Spalding LLP, by S. Stewart Haskins, pro hac vice, for third-party defendant-appellant Home Depot, U.S.A., Inc.*

ZACHARY, Judge.

Third-Party Defendant Home Depot, U.S.A., Inc. ("Home Depot") appeals from an order denying its motion to dismiss or stay in favor of arbitration. After careful review, we affirm the trial court's order.

## ***Background***

In July 2014, Third-Party Plaintiff George W. Jackson entered into agreements

with Third-Party Defendants Carolina Water Systems, Inc. ("CWS") and Home Depot for the purchase and installation of a water-treatment system. The events leading up to these agreements form the basis of Jackson's complaint in this case. However, the issue before us on appeal is Home Depot's attempt to enforce an arbitration agreement that it asserts applies to Jackson's claims. Without addressing the underlying merits of Jackson's claims, we first describe the various agreements at issue in this case before describing the procedural history.

I.    *The Agreements*

A.  *The CWS Purchase Agreement*

On 24 July 2014, Jackson and a CWS representative executed an agreement ("the CWS Purchase Agreement") that described the water-treatment equipment being sold and setting its price. The CWS Purchase Agreement contained an arbitration clause, which provided in pertinent part:

> THIS CONTRACT CONTAINS A BINDING AGREEMENT TO ARBITRATE ALL CLAIMS, DISPUTES AND CONTROVERSIES ARISING OUT OF OR IN CONNECTION WITH THIS CONTRACT. . . . Any controversy, claim or dispute arising out of or relating to this Agreement shall be submitted to arbitration in Charlotte, North Carolina in accordance with the rules and laws of the State of North Carolina.

The next day, the water-treatment equipment was installed at Jackson's home.

B.  *The Home Depot Agreement*

On 6 August 2014, Jackson and John Blum, the President of CWS, executed a

document entitled "Home Improvement Agreement: Approval of Completed Installation" ("the Home Depot Agreement"). Blum signed the document above a signature line that read: "Professional/Authorized Representative on Home Depot's Behalf." The Home Depot Agreement contained a merger clause, which provided in pertinent part:

> You understand this Agreement constitutes the entire understanding between You and Home Depot and may only be amended by a Change Order signed by Home Depot (or by Installation Professional or its authorized representative on Home Depot's behalf) and You. *This Agreement expressly supersedes all prior written or verbal agreements or representations made by Home Depot, Installation Professional, You, or anyone else.* Except as set forth in this Agreement, You agree there are no oral or written representations or inducements, express or implied, in any way conditioning this Agreement, and You expressly disclaim their existence.

(Emphasis added).

¶ 5       The Home Depot Agreement also provided for a separate financing agreement, while explicitly stating that Home Depot would not be a party to such an agreement:

> If You are financing this transaction in whole or in part, *Your separate loan agreement (to which Home Depot is NOT a party)* will determine: (i) the amount financed (the amount of credit provided to You); (ii) the associated finance charges (the dollar amount the loan will cost You); and (iii) the total payment (the amount You will have paid when You have made all scheduled payments). You will be further subject to Your loan agreement's terms and conditions.

(Emphasis added).

¶ 6       The Home Depot Agreement did not contain any language regarding arbitration.

### C.  The Card Agreement

¶ 7       At some point, Jackson entered into an agreement ("the Card Agreement") with Citibank, N.A. ("Citibank") to open an account for a Home Depot-branded credit card. The parties do not contend that Home Depot was a signatory to the Card Agreement.

¶ 8       The Card Agreement provided that "[f]ederal law and the law of South Dakota, where we are located, govern the terms and enforcement of this Agreement."[1] It also included an arbitration clause, stating that "[e]ither you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us[.]"

¶ 9       The Card Agreement further stated that the claims subject to arbitration include "[n]ot only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated

---

[1] We note that Jackson claims that "Home Depot failed to meet its burden of proving that [he] in fact agreed to the Citibank Cardholder Agreement and its arbitration clause." However, under South Dakota law, "use of an accepted credit card . . . creates a binding contract between the card holder and the card issuer[.]" S.D. Codified Laws § 54-11-9 (2019). Here, it is undisputed that Jackson used the card to purchase the water-treatment system.

company, predecessor or successor, heir, assignee, or trustee in bankruptcy." Various terms are specifically defined: the terms "*we*, *us*, and *our* mean Citibank," and the terms "*you*, *your*, and *yours* mean the person who applied to open the account. It also means any other person responsible for complying with this Agreement."

## II.    *Procedural History*

¶ 10    On 9 June 2016, Citibank filed suit against Jackson in Mecklenburg County District Court seeking, *inter alia*, to collect the unpaid balance due on the Home Depot credit card. On 26 August 2016, Jackson filed his answer, in which he generally denied Citibank's allegations, asserted various affirmative defenses, brought a class action counterclaim against Citibank, and brought third-party class action claims against Home Depot and CWS. Jackson's third-party class action claims against Home Depot and CWS arose from alleged violations of the North Carolina statutes prohibiting referral sales and unfair or deceptive trade practices.

¶ 11    Thereafter, on 23 September 2016, Citibank voluntarily dismissed its claims against Jackson.

¶ 12    On 12 October 2016, Home Depot filed notice of removal of Jackson's third-party suit from state court to the United States District Court for the Western District of North Carolina. Sixteen days later, Home Depot filed a motion in federal court to dismiss Jackson's claims or, in the alternative, to stay Jackson's claims in favor of arbitration.

¶ 13        On 8 November 2016, Jackson filed a motion in the federal court to remand the case to the state court. On 2 December 2016, Home Depot filed another motion in federal court to dismiss or stay in favor of arbitration. On 21 March 2017, the federal district court entered its order granting Jackson's motion and remanding the case to Mecklenburg County Superior Court. Home Depot appealed the remand order to the United States Court of Appeals for the Fourth Circuit, which affirmed the federal district court's order on 22 January 2018. *Jackson v. Home Depot U.S.A.*, 880 F.3d 165 (4th Cir. 2018).

¶ 14        On 23 April 2018, Home Depot filed a petition for writ of certiorari with the United States Supreme Court, seeking review of the Fourth Circuit's ruling. Meanwhile, while the matter was on remand in Mecklenburg County Superior Court, on 10 May 2018, Home Depot and CWS filed a new motion to dismiss or stay in favor of arbitration. The United States Supreme Court granted Home Depot's petition for writ of certiorari on 27 September 2018, and on 28 May 2019, it issued an opinion affirming the Fourth Circuit's ruling. *Home Depot U.S.A., Inc. v. Jackson*, ___ U.S. ___, 204 L. Ed. 2d 34, *reh'g denied*, ___ U.S. ___, 204 L. Ed. 2d 1172 (2019).

¶ 15        On 19 June 2018, the Chief Justice of the North Carolina Supreme Court designated this matter as an "exceptional civil case" pursuant to Rule 2.1 of the General Rules of Practice, and assigned the Honorable Forrest D. Bridges to preside over the case.

¶ 16 On 6 September 2019, Home Depot and CWS's motion to dismiss or stay in favor of arbitration came on for hearing before Judge Bridges in Mecklenburg County Superior Court. On 21 October 2019, the trial court entered its order denying the motion. Home Depot filed its notice of appeal on 20 February 2020.[2]

### *Appellate Jurisdiction*

¶ 17 As a preliminary matter, the trial court's order denying Home Depot's motion to dismiss or stay in favor of arbitration is interlocutory "because it does not determine all of the issues between the parties and directs some further proceeding preliminary to a final judgment." *Martin v. Vance*, 133 N.C. App. 116, 119, 514 S.E.2d 306, 308 (1999). "Ordinarily, interlocutory orders are not immediately appealable." *Hager v. Smithfield E. Health Holdings, LLC*, 264 N.C. App. 350, 354, 826 S.E.2d 567, 571, *disc. review denied*, 373 N.C. 253, 835 S.E.2d 446 (2019). However, this Court has previously determined that an appeal from an order denying arbitration, although interlocutory, "is immediately appealable because it involves a substantial right . . . which might be lost if appeal is delayed." *Pressler v. Duke Univ.*, 199 N.C. App. 586, 590, 685 S.E.2d 6, 9 (2009) (citation omitted). Accordingly, the interlocutory nature of the trial court's order denying the motion does not deprive this Court of jurisdiction to reach the merits of this appeal.

---

[2] CWS did not join Home Depot's appeal of the trial court's order.

¶ 18    Also at issue is the timeliness of Home Depot's notice of appeal. Home Depot filed its notice of appeal three months after the trial court entered the order from which Home Depot appeals. In its notice of appeal, Home Depot asserts that "[t]hrough some inadvertent error, the parties did not receive" the trial court's order until the court notified the parties of the order by email on 22 January 2020. The record in this appeal contains no certificate of service of the superior court's order.

¶ 19    Nonetheless, Home Depot's notice is sufficient to confer jurisdiction on this Court. It is well settled that the appellee must establish that the notice of appeal was untimely where the record on appeal contains no certificate of service:

> Although this notice ordinarily would be untimely under N.C. R. App. P. 3(c), where there is no certificate of service in the record showing *when* [the] appellant was served with the trial court judgment, [the] *appellee* must show that [the] appellant received actual notice of the judgment more than thirty days before filing notice of appeal in order to warrant dismissal of the appeal.

*In re Duvall*, 268 N.C. App. 14, 17, 834 S.E.2d 177, 180 (2019) (citation and internal quotation marks omitted). "[U]nless the appellee argues that the appeal is untimely, and offers proof of actual notice, we may not dismiss." *Id.* (citation omitted).

¶ 20    In the instant case, Jackson does not argue that the appeal is untimely, nor does he offer proof of actual notice or service more than 30 days prior to Home Depot's filing of its notice of appeal. Thus, Home Depot's appeal is properly before us. *See id.*

### Discussion

On appeal, Home Depot argues that the trial court erred in denying its motion to dismiss or stay in favor of arbitration. Home Depot claims that the trial court erred by (1) concluding that Home Depot was not entitled to enforce the arbitration agreement found in the Card Agreement, either as a third-party beneficiary or under the doctrine of equitable estoppel; (2) failing to make findings of fact regarding the Card Agreement; and (3) concluding that a novation occurred upon execution of the Home Depot Agreement.

## I. *Existence of an Arbitration Agreement*

Of the various contracts at issue in this case, the Home Depot Agreement is the only one to which Home Depot is a signatory, and the Home Depot Agreement does not contain an arbitration clause. Nevertheless, Home Depot argues that it is entitled to enforce the arbitration agreement found in the Card Agreement, either as a third-party beneficiary or under the doctrine of equitable estoppel.

### A. *Standard of Review and Applicable Legal Principles*

"North Carolina has a strong public policy favoring the settlement of disputes by arbitration." *Johnston Cty. v. R.N. Rouse & Co.*, 331 N.C. 88, 91, 414 S.E.2d 30, 32 (1992). "However, before a dispute can be settled in this manner, there must first exist a valid agreement to arbitrate. . . . The party seeking arbitration bears the burden of proving the parties mutually agreed to the arbitration provision." *King v. Owen*, 166 N.C. App. 246, 248, 601 S.E.2d 326, 327 (2004) (citation and internal

quotation marks omitted).

On appeal, findings of fact made by the trial court are binding upon the appellate court in the absence of a challenge to those findings. *Id.* "The party seeking arbitration must show that the parties mutually agreed to arbitrate their disputes. The trial court's findings regarding the existence of an arbitration agreement are conclusive on appeal where supported by competent evidence, even where the evidence might have supported findings to the contrary." *Slaughter v. Swicegood*, 162 N.C. App. 457, 461, 591 S.E.2d 577, 580 (2004) (citations and internal quotation marks omitted). "The question of whether a dispute is subject to arbitration is an issue for judicial determination. A trial court's conclusion as to whether a particular dispute is subject to arbitration is a conclusion of law," which this Court reviews de novo. *Pressler*, 199 N.C. App. at 590, 685 S.E.2d at 9 (citation omitted).

The determination of whether a particular dispute is subject to arbitration "involves a two-step analysis requiring the trial court to ascertain both (1) whether the parties had a valid agreement to arbitrate, and also (2) whether the specific dispute falls within the substantive scope of that agreement." *Slaughter*, 162 N.C. App. at 461, 591 S.E.2d at 580 (citation and internal quotation marks omitted).

The first step of this analysis—whether the parties had a valid agreement to arbitrate—is the issue presented in this case.

### B. *Third-Party Beneficiary Status*

¶ 27 Home Depot first argues that under South Dakota law, it is a third-party beneficiary of the Card Agreement. We disagree.

¶ 28 "Under South Dakota law, a contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it." *Jennings v. Rapid City Reg'l Hosp., Inc.*, 802 N.W.2d 918, 921 (S.D. 2011) (citation and internal quotation marks omitted). "This does not, however, entitle every person who received *some* benefit from the contract to enforce it." *Sisney v. State*, 754 N.W.2d 639, 643 (S.D. 2008) (emphasis added). South Dakota law "requires that *at the time the contract was executed*, it was the contracting parties' intent to *expressly* benefit the third party. And, even then, not all beneficiaries qualify: incidental beneficiaries are not entitled to third-party beneficiary status." *Id.*; *accord Jennings*, 802 N.W.2d at 922 ("The terms of the contract must clearly express intent to benefit that party or an identifiable class of which the party is a member." (citation omitted)). In this respect, South Dakota law is substantively in accord with North Carolina law. *See, e.g.*, *Revels v. Miss Am. Org.*, 182 N.C. App. 334, 336, 641 S.E.2d 721, 723 ("It is not enough that the contract, in fact, benefits the third party, if, when the contract was made, the contracting parties did not intend it to benefit the third party directly."), *disc. review denied*, 361 N.C. 430, 648 S.E.2d 844 (2007).

¶ 29 In the present case, Home Depot argues that the trial court erred by declining to enforce the arbitration clause of the Card Agreement, as requested by Home Depot.

The trial court explained that "as the express language of the Home Depot Agreement provides, Home Depot is not a party to separate financing agreements. [Thus], . . . any separate loan or financing agreement between only Mr. Jackson and CitiBank does not serve as an agreement to arbitrate between *the parties to this action*."

¶ 30 In response, Home Depot asserts that, by its own terms, the arbitration clause of the Card Agreement covers "[c]laims made by or against anyone connected with us or you or claiming through us or you," and that this language authorizes it to compel arbitration in this case. Home Depot further argues that Jackson's "decision to bring Home Depot into the action that Citibank initiated under the Card Agreement leaves no doubt that [Jackson] himself saw Home Depot as 'connected with' Citibank for purposes of the Card Agreement and [Jackson]'s transaction."

¶ 31 However, by its own terms, the Card Agreement does not provide Home Depot with the authority to compel arbitration. In *White v. Sunoco, Inc.*, 870 F.3d 257 (3d Cir. 2017), the United States Court of Appeals for the Third Circuit analyzed a similar argument regarding identical language in another Citibank credit-card agreement. Although *White* is not binding authority on this Court, we are nevertheless persuaded by the Third Circuit's analysis and adopt its reasoning here.

¶ 32 The plaintiff in *White* sued Sunoco, alleging fraud on behalf of a putative class, and Sunoco similarly sought to enforce an arbitration agreement contained in a Citibank card agreement to which it was not a signatory. *Id.* at 259. The Third Circuit

rejected Sunoco's argument:

> Sunoco's argument fails because it confuses the nature of
> the *claims covered by the arbitration clause* with the
> question of *who can compel arbitration.* Even if Sunoco is
> "connected" with Citibank and the claims against Sunoco
> are covered claims, that does not give Sunoco the right to
> elect to arbitrate against White. The arbitration clause of
> the Cardholder Agreement establishes unequivocally that
> "[e]ither you or we may, without the other's consent, elect
> mandatory, binding arbitration for any claim, dispute, or
> controversy between you and us (called 'Claims')."
> Moreover, the clause also provides, "At any time you or we
> may ask an appropriate court to compel arbitration of
> Claims." The Cardholder Agreement defines "you" as the
> card holder and "we" and "us" as Citibank. Nowhere does
> the agreement provide for a third party, like Sunoco, the
> ability to elect arbitration or to move to compel arbitration.

*Id.* at 267–68 (emphases added) (citations omitted).

¶ 33     The arbitration clause of the Citibank agreement in *White* contained the same
"anyone connected with us" language regarding claims covered by the arbitration
clause as does the Card Agreement at issue in this case. *Id.* at 261. The Card
Agreement at issue here contains the same pertinent language as the arbitration
clause in *White*, including the definitions and the statements as to who may compel
arbitration. Although not binding authority, we find *White* to be directly on point and
persuasive. The Card Agreement does not provide Home Depot with the authority to
compel arbitration.

¶ 34     Home Depot also argues that the trial court erred by ignoring that (1) Jackson

entered into the Card Agreement "for the sole purpose of purchasing his water treatment system"; (2) the Card Agreement "is replete with references to Home Depot"; and (3) Jackson "agreed to allow Citibank to share information with Home Depot about [his] transaction history and experiences with the credit card." Home Depot asserts that, taken together, these considerations "compel the conclusion that the Card Agreement was intended to benefit Home Depot."

¶ 35        These assertions are meritless. Again, we find *White* persuasive. Sunoco presented a similar argument before the Third Circuit, which was "skeptical of whether the joint marketing campaign between Sunoco and Citibank could make Sunoco a 'connected' entity under the arbitration clause." *Id.* at 268. The card agreement in *White* again contained identical language to the Card Agreement at issue here, providing that arbitration could be invoked for any claims "made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy." *Id.*

¶ 36        The Third Circuit concluded that Sunoco was not intended to be a third-party beneficiary of the card agreement, particularly with regard to the arbitration clause:

> [N]one of these enumerated relationships apply to Sunoco, and Sunoco is not even mentioned in the Cardholder Agreement. Additionally, while the enumerated items are

preceded by "such as," the relationships listed evoke far closer connections—ones where rights and obligations are intertwined and where liability may be shared—than the one that Sunoco purports to have with Citibank in this case. The clause read in context suggests that the parties did not intend for it to govern an entity with merely a marketing relationship with Citibank.

*Id.*

¶ 37    While Home Depot attempts to distinguish *White* by noting that it is mentioned throughout the Card Agreement in this case, that is a distinction without a difference; with the sole exception of the term allowing Citibank to share transaction history with Home Depot, every reference to Home Depot is merely an identification of the branded credit card. These references to the name of the card, with the isolated support of the transaction-history term, do not provide a sufficient "rationale for why its marketing agreement with Citibank confers on it a close enough relationship to merit coverage by this clause." *Id.*

¶ 38    Competent evidence in the record supports the trial court's conclusion that Home Depot was not a third-party beneficiary of the Card Agreement. The trial court's conclusion is thus binding on appeal. *See Slaughter*, 162 N.C. App. at 461, 591 S.E.2d at 580. Home Depot's argument is overruled.

### C. Equitable Estoppel

¶ 39    Home Depot also argues that Jackson is equitably estopped from claiming that Home Depot cannot compel arbitration under the Card Agreement. We first note that

Jackson maintains that Home Depot did not raise this argument before the trial court and asserts that it cannot argue it for the first time on appeal. Home Depot responds that it "did argue equitable estoppel before the trial court in both its briefing and proposed order on the arbitration motion[,]" but that Jackson "refused to consent to including the parties' motion briefing in the record on appeal."

¶ 40        Under Rule 11 of the North Carolina Rules of Appellate Procedure, the appellant bears the burden of settling the record on appeal. Where one party objects to the inclusion of an item or items in the record on appeal, "then that item shall not be included in the printed record on appeal, but shall be filed by the appellant with the printed record on appeal in a volume captioned 'Rule 11(c) Supplement to the Printed Record on Appeal[.]' " N.C.R. App. P. 11(c). Home Depot did not file a Rule 11(c) Supplement in this appeal, so we are unable to definitively discern whether it argued the issue of equitable estoppel at the trial court below. However, even assuming that this issue is properly before us, equitable estoppel does not apply to the case at bar.

¶ 41        Home Depot argues before this Court that equitable estoppel is "a doctrine which prevents a party from asserting a right that he otherwise would have had against another when his conduct would make the assertion of those rights contrary to equity." *LSB Fin. Servs., Inc. v. Harrison*, 144 N.C. App. 542, 548, 548 S.E.2d 574, 579 (2001) (citation and internal quotation marks omitted). However, in *LSB* and the

other authorities cited by Home Depot, the courts applied the doctrine of equitable estoppel where a signatory to a contract containing an arbitration clause sought to enforce the clause against a non-signatory that was claiming that other provisions of the contract should be enforced to its benefit. *Id.* at 548–49, 548 S.E.2d at 579; *see also Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000). These cases are inapposite in the factual setting of the case at bar, in which Home Depot is seeking to enforce an arbitration clause in an agreement to which it was not itself a signatory.

¶ 42    In contrast to the cases cited by Home Depot, in which a plaintiff seeks to avoid arbitration while suing to enforce other provisions of the same contract that provides for the authority to compel arbitration, here, Jackson's claims all arise from alleged violations of North Carolina's statutes prohibiting referral sales and unfair or deceptive trade practices—Jackson's claims do not arise from any alleged violation of the terms or conditions of the Card Agreement, and he does not seek to enforce any provision of the Card Agreement. Therefore, because Jackson is "not seeking a direct benefit from the provisions of the [Card Agreement], we conclude that the doctrine of equitable estoppel cannot be used to force [him] to arbitrate" his claims. *Ellen v. A.C. Schultes of Md., Inc.*, 172 N.C. App. 317, 322–23, 615 S.E.2d 729, 733 (2005), *cert. and disc. review denied*, 360 N.C. 575, 635 S.E.2d 430 (2006); *see also White*, 870 F.3d at 265 ("[E]ven if the Card Agreement contained entirely different terms—for

example, about the interest rate, credit limit, billing address, annual membership fee, foreign transaction fees, payment schedules, credit reporting rules, or even the arbitration agreement—that would not have any bearing on the validity of White's claims against Sunoco regarding its allegedly fraudulent promise . . . . Accordingly, White cannot be required to arbitrate based on the Card Agreement[.]").

¶ 43    Thus, assuming that this issue is properly before us, Home Depot has not shown that Jackson is equitably estopped from arguing that Home Depot cannot compel arbitration under the Card Agreement. Home Depot's argument is overruled.

## II.    *Findings of Fact*

¶ 44    We next address Home Depot's argument that the trial court erred by failing to make findings of fact regarding the Card Agreement. We disagree.

¶ 45    "This Court has repeatedly held that an order denying a motion to compel arbitration must include findings of fact as to whether the parties had a valid agreement to arbitrate and, if so, whether the specific dispute falls within the substantive scope of that agreement." *Cornelius v. Lipscomb*, 224 N.C. App. 14, 16, 734 S.E.2d 870, 871 (2012) (citation and internal quotation marks omitted); *accord United States Tr. Co., N.A. v. Stanford Grp. Co.*, 199 N.C. App. 287, 290, 681 S.E.2d 512, 514 (2009) ("This Court has stressed repeatedly that, in making this determination, the trial court must state the basis for its decision in denying a defendant's motion to stay proceedings pending arbitration in order for this Court to

properly review whether or not the trial court correctly denied the defendant's motion." (citation and internal quotation marks omitted)). "When a trial court fails to include findings of fact in its order, this Court has repeatedly reversed and remanded to the trial court for a new order containing the requisite findings." *Cornelius*, 224 N.C. App. at 16–17, 734 S.E.2d at 871.

¶ 46        However, it is well settled that "[t]he labels 'findings of fact' and 'conclusions of law' employed by the trial court in a written order do not determine the nature of our review." *Westmoreland v. High Point Healthcare Inc.*, 218 N.C. App. 76, 79, 721 S.E.2d 712, 716 (2012). "Generally, any determination requiring the exercise of judgment or the application of legal principles is more properly classified a conclusion of law. On the other hand, any determination reached through logical reasoning from the evidentiary facts is more properly classified a finding of fact." *Peters v. Pennington*, 210 N.C. App. 1, 15, 707 S.E.2d 724, 735 (2011) (citations and internal quotation marks omitted).

¶ 47        The trial court did not make any findings of fact concerning the Card Agreement within the "Findings of Fact" section of its order, but it did make a finding of fact concerning that Agreement in its "Conclusions of Law" section:

> The Court also notes Third-Party Defendants' contention that an arbitration provision in a CitiBank credit card agreement is a basis for their motion to compel arbitration; *however, as the express language of the Home Depot Agreement provides, Home Depot is not a party to separate*

*financing agreements.*

(Emphasis added). The italicized language is more properly described as a "determination reached through logical reasoning from the evidentiary facts" than one "requiring the exercise of judgment or the application of legal principles[.]" *Id.* (citation and internal quotation marks omitted). Thus, Home Depot is not correct that the trial court made no findings of fact regarding the Card Agreement.

¶ 48        Further, we note that *Cornelius*, and the cases it cites, stand for the proposition that "an order denying a motion to compel arbitration must include findings of fact as to *whether the parties had a valid agreement to arbitrate*[.]" 224 N.C. App. at 16, 734 S.E.2d at 871 (emphasis added) (citation and internal quotation marks omitted). Although it may not contain the findings of fact that Home Depot preferred, the trial court's order nevertheless satisfied this mandate. Our precedent does not compel us to reverse and remand to the trial court for the entry of further findings of fact as to a separate and distinct agreement that the trial court properly concluded did not govern "*the parties to this action.*" Home Depot's argument is overruled.

### III.    *Novation*

¶ 49        Lastly, Home Depot argues that the trial court erred in concluding that a novation occurred upon execution of the Home Depot Agreement, thereby extinguishing the CWS Purchase Agreement. We disagree.

¶ 50        "A novation is the substitution of a new contract for an old one which is thereby

extinguished." *Intersal, Inc. v. Hamilton*, 373 N.C. 89, 98, 834 S.E.2d 404, 412 (2019) (citation omitted). "The essential requisites of a novation are a previous valid obligation, the agreement of all the parties to the new contract, the extinguishment of the old contract, and the validity of the new contract." *Id.* (citation omitted). Whether a novation occurred is a question of law, which this Court reviews de novo. *See Anthony Marano Co. v. Jones*, 165 N.C. App. 266, 269, 598 S.E.2d 393, 395 (2004).

Our Supreme Court has explained that, in determining whether a novation has occurred,

> the intent of the parties governs. If the parties do not say whether a new contract is being made, the courts will look to the words of the contracts, and the surrounding circumstances, if the words do not make it clear, to determine whether the second contract supersedes the first. If the second contract deals with the subject matter of the first so comprehensively as to be complete within itself or if the two contracts are so inconsistent that the two cannot stand together a novation occurs.

*Intersal*, 373 N.C. at 98–99, 834 S.E.2d at 412 (citation omitted).

As regards this issue, the trial court determined:

> 4. Although CWS and Mr. Jackson entered into the initial CWS Purchase Agreement on July 25, 2014, the parties to this action agreed to the Home Depot Agreement on August 6, 2014.
>
> 5. The plain language on the face of the Home Depot Agreement makes it clear that the parties expressly intended for the Home Depot Agreement to supersede the CWS Purchase Agreement.

6. Moreover, the Home Depot Agreement deals with the subject matter of the CWS Purchase Agreement so comprehensively as to be complete within itself.

7. The CWS Purchase Agreement was therefore extinguished upon the execution of the Home Depot Agreement and, accordingly, the Home Depot Agreement is the sole, operative agreement between the parties to this action.

8. As a result, because the Home Depot Agreement does not contain an arbitration clause, the Court concludes that no agreement to arbitrate exists between the parties to this action.

¶ 53      Home Depot argues that the trial court erred because "Home Depot was not a party to the [CWS] Purchase Agreement, and CWS was not a party to the Home [Depot] Agreement." However, John Blum—the President of CWS—signed the Home Depot Agreement on a signature line labeled "Professional/Authorized Representative on Home Depot's Behalf." This alone is competent evidence to support the trial court's findings, and eventual conclusion, that a novation occurred.

¶ 54      Home Depot also argues that the Home Depot Agreement "does not even reference the [CWS] Purchase Agreement, much less demonstrate an intent to 'supersede' it." However, this contention is meritless, as the explicit language of the Home Depot Agreement's merger clause supports the trial court's conclusion:

> [T]his Agreement constitutes the entire understanding between You and Home Depot and may only be amended by a Change Order signed by Home Depot (or by Installation Professional or its authorized representative on Home Depot's behalf) and You. *This Agreement*

> *expressly supersedes all prior written or verbal agreements or representations made by Home Depot, Installation Professional, You, or anyone else.*

(Emphasis added).

¶ 55    On the same page, the Home Depot Agreement defines "Installation Professional" as "an independent contractor authorized by Home Depot (licensed and insured as required by Home Depot and applicable law) and the contractor's employees, agents and subcontractors." Indeed, in an unchallenged finding of fact—which is thus binding on appeal, *King*, 166 N.C. App. at 248, 601 S.E.2d at 327—the trial court noted that "CWS is the 'Installation Professional' or 'Professional' as defined in the Home Depot Agreement."

¶ 56    Accordingly, there is sufficient evidence to support the trial court's conclusion that the Home Depot Agreement, by its own terms, expressly superseded the CWS Purchase Agreement. Home Depot's argument is overruled.

### Conclusion

¶ 57    For the foregoing reasons, the trial court did not err by denying Home Depot's motion to dismiss or stay in favor of arbitration. Accordingly, we affirm the trial court's order.

AFFIRMED.

Judges WOOD and JACKSON concur.