JOSEPH C. SCIOLINO AND CONSTANCE F. SCIOLINO, PLAINTIFFS v. TD WATERHOUSE INVESTOR SERVICES, INC.; WATERHOUSE SECURITIES, INC.; NEIL KIRK PORTER, AND ANTHONY TYSON POPE, DEFENDANTS

No. COA01-422

(Filed 2 April 2002)

**1. Appeal and Error— appealability—denial of arbitration—substantial right**

Although defendants' appeal from the denial of their motion to compel arbitration is an appeal from an interlocutory order, an order denying arbitration is immediately appealable because it involves a substantial right.

**2. Arbitration and Mediation— motion to compel—customer agreement not attached to signed application**

The trial court did not err in an action alleging breach of contract, breach of fiduciary duty, negligence, constructive fraud, securities fraud, and conversion arising from a brokerage account by denying defendants' motion to compel arbitration even though defendants assert that plaintiffs are bound to the terms of defendants' customer agreement requiring arbitration, because: (1) defendants produced no evidence that plaintiffs actually received either customer agreement when they signed the application, and thus there was competent evidence before the trial court that defendants failed to attach a customer agreement to the account application; and (2) as the customer agreement was not attached to the application, plaintiff did not agree, under the plain language of the contract, to be bound by its terms.

Appeal by defendants from order entered 13 December 2000 by Judge Ronald L. Stephens in Wake County Superior Court. Heard in the Court of Appeals 31 January 2002.

*Ellis & Winters L.L.P., by J. Anthony Penry, for plaintiff appellees.*

*Burns, Day & Presnell, P.A., by Daniel C. Higgins, for defendant appellants.*

TIMMONS-GOODSON, Judge.

TD Waterhouse Investor Services, Inc., Waterhouse Securities, Inc., Neil Kirk Porter and Anthony Tyson Pope (collectively, "defend-

ants") appeal from an order denying their motion to compel arbitration. For the reasons stated herein, we affirm the order of the trial court.

On 29 June 2000, Joseph C. Sciolino and his wife, Constance F. Sciolino (collectively, "plaintiffs"), filed a complaint against defendants in Wake County Superior Court, alleging breaches of contract and fiduciary duty, negligence, constructive and securities fraud, and conversion. Defendants thereafter filed a motion to compel arbitration of plaintiffs' claims, which motion the trial court heard on 26 October 2000. Upon consideration of all of the evidence and arguments by the parties, the trial court made the following findings of fact:

1. Plaintiffs are citizens of Wake County, North Carolina. They opened a joint brokerage account with the corporate defendants. In connection therewith, plaintiffs executed a document entitled "Waterhouse webBroker New Account Application." A copy of that agreement was attached to the affidavit of Ms. Campanella, an employee of Waterhouse. Both plaintiffs signed the document on its reverse side on or about August 12, 1998. The document, at paragraph 11(5), references an attached "customer agreement."

2. Defendants attached a customer agreement to their original motion to compel arbitration, and to the affidavit of Ms. Campanella. That customer agreement is on a separate sheet from the new account application. It contains an arbitration clause. However, the customer agreement is not signed by either plaintiff or any of defendants. Defendants contend that the customer agreement was provided to plaintiffs at the time they executed the new account application.

3. Plaintiffs deny having been provided with a copy of the customer agreement. Mr. Sciolino testified, by affidavit, that he had searched his files, and did not have a copy of a customer agreement. Mr. Sciolino testified, in his affidavit, that he inquired of defendant Porter, in November, 1999, as to the existence of any documents in plaintiffs' file, and that Mr. Porter provided Mr. Sciolino with certain documents that are attached as exhibits to Mr. Sciolino's affidavit, representing that those documents constituted the account documents. The documents provided by Mr. Porter include a customer agreement, but it is not the same customer agreement that was attached to defendants' motion. In

fact, the customer agreement provided to Mr. Sciolino by Mr. Porter contains a revision date of September, 1998, which is after the date on which plaintiffs signed the new account application.

4. Plaintiffs have disputed the existence of an agreement to arbitrate. After having conducted a plenary hearing, the court finds that the existence of an agreement to arbitrate has not been demonstrated.

Based on the above-stated facts, the trial court concluded that an arbitration agreement did not exist and accordingly denied defendants' motion to compel arbitration, from which order defendants appeal.

---

The sole issue on appeal is whether the trial court erred in denying defendants' motion to compel arbitration. We conclude that the trial court properly denied defendants' motion.

[1] We note initially that the order denying defendants' motion to compel arbitration is interlocutory, as it is not a final judgment. *See Veazey v. Durham*, 231 N.C. 357, 361-62, 57 S.E.2d 377, 381 (1950). Although we do not generally review interlocutory orders, *see id.*, "an order denying arbitration is immediately appealable because it involves a substantial right, the right to arbitrate claims, which might be lost if appeal is delayed." *Martin v. Vance*, 133 N.C. App. 116, 119, 514 S.E.2d 306, 308 (1999). Thus, we review the merits of defendants' appeal in the instant case.

[2] Defendants argue that the trial court erred in denying their motion to compel arbitration. Noting the public policy which favors arbitration, defendants contend that, by signing the webBroker Account Application ("the application"), plaintiffs agreed to submit any dispute arising from their account to arbitration. The application at issue contains the following statements:

By signing this Agreement I acknowledge that:

1) I have read, understand, and agree to be bound by the terms of the attached Customer Agreement . . . .

. . . .

5) The enclosed Customer Agreement contains a pre-dispute Arbitration clause. Please see paragraph #9 of the Customer Agreement for full details.

Defendants argue that the above-stated language incorporates by reference the customer agreement containing the arbitration clause, such that plaintiffs are bound by its terms.

When a party disputes the existence of a valid arbitration agreement, the trial judge must determine whether an agreement to arbitrate exists. *See* N.C. Gen. Stat. § 1-567.3(a) (1999); *Burke v. Wilkins*, 131 N.C. App. 687, 689, 507 S.E.2d 913, 914 (1998). The trial court's findings regarding the existence of an arbitration agreement are conclusive on appeal where supported by competent evidence, even where the evidence might have supported findings to the contrary. *See Routh v. Snap-On Tools Corp.*, 108 N.C. App. 268, 272, 423 S.E.2d 791, 794 (1992). Accordingly, upon appellate review, we must determine whether there is evidence in the record supporting the trial court's findings of fact and if so, whether these findings of fact in turn support the conclusion that there was no agreement to arbitrate. *See Prime South Homes v. Byrd*, 102 N.C. App. 255, 258, 401 S.E.2d 822, 825 (1991).

Before a dispute can be settled by arbitration, there must first exist a valid agreement to arbitrate. *See* N.C. Gen. Stat. § 1-567.2 (1999); *Routh*, 108 N.C. App. at 271, 423 S.E.2d at 794. As the moving party, defendants bear the burden of demonstrating that the parties mutually agreed to arbitrate their dispute. *See Blow v. Shaughnessy*, 68 N.C. App. 1, 17, 313 S.E.2d 868, 877, *disc. review denied*, 311 N.C. 751, 321 S.E.2d 127 (1984). "This Court has even suggested that an agreement to arbitrate, if contained in a contract covering other topics, must be independently negotiated. This apparent requirement for independent negotiation underscores the importance of an arbitration provision and 'militates against its inclusion in contracts of adhesion.' " *Routh*, 108 N.C. App. at 272, 423 S.E.2d at 794 (quoting *Blow*, 68 N.C. App. at 16, 313 S.E.2d at 877) (citations omitted).

In support of their motion to compel arbitration, defendants submitted two different customer agreements, one of which was revised a month after plaintiffs opened their account. Neither customer agreement bears the signatures of plaintiffs or defendants. Defendants nevertheless assert that plaintiffs are bound to the terms of the customer agreement because the arbitration clause contained in the revised customer agreement is identical to the one referenced by the application signed by plaintiffs. We disagree.

It is well established that a valid contract arises only where the parties "assent to the same thing in the same sense, and their

**SCIOLINO v. TD WATERHOUSE INVESTOR SERVS., INC.**

[149 N.C. App. 642 (2002)]

minds . . . meet as to all the terms." *Goeckel v. Stokeley*, 236 N.C. 604, 607, 73 S.E.2d 618, 620 (1952); *see Walker v. Goodson Farms, Inc.*, 90 N.C. App. 478, 486, 369 S.E.2d 122, 126, *disc. review denied*, 323 N.C. 370, 373 S.E.2d 556 (1988). Where there is no mutual agreement as to all of the terms, there is no contract. *See Goeckel*, 236 N.C. at 607, 73 S.E.2d at 620. "If a question arises concerning a party's assent to a written instrument, the court must first examine the written instrument to ascertain the intention of the parties." *Routh*, 108 N.C. App. at 273, 423 S.E.2d at 795.

In the application signed by plaintiffs in the instant case, plaintiffs agreed to "be bound by the terms of the attached Customer Agreement." Plaintiffs deny, however, that defendants attached any type of document to the application. Defendants have produced two separate customer agreements, neither of which is attached to the application signed by plaintiffs and neither of which bears plaintiffs' signatures. Further, as plaintiffs note, "there is nothing on the Customer Agreement itself—no signature, no initials, no account number—to suggest that it was ever provided to plaintiffs; when it was provided; in connection with which account it was provided, whether the sole or joint account; or whether plaintiffs ever saw it at all." Although the arbitration clauses contained within the two customer agreements are identical, the remaining clauses are not identical. Defendants produced no evidence that plaintiffs actually received either customer agreement when they signed the application. Thus, there was competent evidence before the trial court that defendants failed to attach a customer agreement to the account application. As the customer agreement was not attached to the application, plaintiffs did not agree, under the plain language of the contract, to be bound by its terms. In light of the lack of evidence presented by defendants in support of their contention that plaintiffs agreed to arbitrate their claim, we hold that the trial court properly concluded that defendants failed to demonstrate that there was a valid agreement to arbitrate. We therefore affirm the trial court's order denying defendants' motion to compel arbitration.

Affirmed.

Judges BRYANT and SMITH concur.