HERBERT WILLIAM KENNEDY d/b/a HERBIE'S AUTO SALES, Plaintiff,
v.
BRANCH BANKING & TRUST CO., Defendant.
No. COA03-1401
North Carolina Court of Appeals
Filed July 6, 2004.
This case not for publication
Guilford County No. 03 CVS 6034.
Smith, James, Rowlett & Cohen, LLP, by Norman B. Smith, for plaintiff-appellee.
Walter W. Pitt, Jr., and Kevin G. Williams, for defendant-appellant.
TYSON, Judge.
Branch Banking & Trust Company ("defendant") appeals from an order denying its motion to compel arbitration and motion to stay proceeding. We affirm.

I. Background
On 8 December 1999, Herbert William Kennedy ("plaintiff"), on behalf of Herbie's Auto Sales, established a business bank account with defendant and signed a printed form entitled "BB&T Signature Card (North Carolina)" ("signature card"). The signature card that plaintiff signed states:
The undersigned hereby certify that: (1) the type of ownership designated is correct; (2)the "Bank Services Agreement," the "BB&T Interest Schedule," the "BB&T Financial Services Pricing Guide," or the "Commercial Bank Services Agreement" and the "BB&T Business Services Information Guide" as applicable, have been received; and (3) the undersigned agree to all of the terms and conditions contained in said brochures, all of which are incorporated herein by reference.
Paragraph 29 of the Commercial Bank Services Agreement ("service agreement") states:
29. Arbitration. IT IS IMPORTANT THAT YOU READ THIS ARBITRATION PROVISION CAREFULLY. IT PROVIDES THAT YOU MAY BE REQUIRED TO SETTLE A CLAIM OR DISPUTE THROUGH ARBITRATION, EVEN IF YOU PREFER TO LITIGATE SUCH CLAIMS IN COURT. YOU ARE WAIVING RIGHTS YOU MAY HAVE TO LITIGATE THE CLAIMS IN A COURT OR BEFORE A JURY OR TO PARTICIPATE IN A CLASS ACTION LAWSUIT OR OTHER REPRESENTATIVE ACTION WITH RESPECT TO SUCH CLAIMS. IN NO EVENT AND UNDER NO CIRCUMSTANCES SHALL ANY PARTY BE LIABLE FOR ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL, PUNITIVE OR INDIRECT DAMAGES, INCLUDING, WITHOUT LIMITATION LOSS OF PROFITS, EVEN IF A PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. Any claim of dispute ("Claim") by either you or us against the other arising from or related in any way to your account, this Commercial Bank Services Agreement or any transaction conducted at the Bank or any of its affiliates, will, at the election of either you or us, be resolved by binding arbitration. . . .
Plaintiff asserts defendant's customer service representative informed him that the only purpose of the signature card was to open the bank account. Plaintiff also denies receiving a copy of the Commercial Bank Services Agreement until after the commencement of this action.
On 8 January 2003, defendant deducted $72,000.00 from plaintiff's account after someone purporting to be plaintiffpresented a check for payment at defendant's branch. Plaintiff received his monthly bank statement on 5 February 2003 showing this payment. Plaintiff reported to defendant that the check had been stolen, contained a forged signature, and had been wrongfully paid. Plaintiff filed this action on 15 April 2003 to recover the sum of $72,000.00 that he contends defendant wrongfully paid. Defendant filed a motion to compel arbitration and motion to stay proceeding on 16 June 2003. The trial court denied these motions. Defendant appeals.

II. Issues
The sole issue presented is whether the trial court erred in denying defendant's motion to compel arbitration and motion to stay proceeding as plaintiff executed a signature card incorporating by reference an agreement to arbitrate.

III. Arbitration Agreement
Defendant argues that plaintiff's execution of the signature card contractually obligates him to submit the current dispute to binding arbitration. Under our standard of review, we disagree.
"[A]n order denying arbitration, although interlocutory, is immediately appealable because it involves a substantial right which might be lost if appeal is delayed." Prime South Homes v. Byrd, 102 N.C. App. 255, 258, 401 S.E.2d 822, 825 (1991).
When a party disputes the existence of a valid arbitration agreement, the trial judge must determine whether an agreement to arbitrate exists. The trial court's findings regarding the existence of an arbitration agreement are conclusive on appeal where supported by competent evidence, even where the evidence might have supported findings to the contrary. Accordingly, upon appellate review, we must determine whether there is evidence in the record supporting the trial court's findings of fact and if so, whether these findings of fact in turn support the conclusion that there was no agreement to arbitrate.
Sciolino v. TD Waterhouse Investor Servs., Inc., 149 N.C. App. 642, 645, 562 S.E.2d 64, 66, disc. rev. denied, 356 N.C. 167, 568 S.E.2d 611 (2002) (citations omitted).
In determining whether a dispute is subject to arbitration, we "must ascertain both (1) whether the parties had a valid agreement to arbitrate, and also (2) whether `the specific dispute falls within the substantive scope of that agreement.'" Raspet v. Buck, 147 N.C. App. 133, 136, 554 S.E.2d 676, 678 (2001) (quoting PaineWebber Inc. v. Hartmann, 921 F.2d 507, 511 (3d Cir. 1990)). The parties do not assert or argue their dispute is outside the scope of the agreement. This issue is not before us.
The Federal Arbitration Act ("FAA") "applies where there is `a contract evidencing a transaction involving commerce.'" Carpenter v. Brooks, 139 N.C. App. 745, 749, 534 S.E.2d 641, 645 (2000) (quoting Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 277, 130 L. Ed. 2d 753, 766 (1995) (quoting 9 U.S.C.A. § 2)) (emphasis in original). "`Commerce' under the FAA means interstate or foreign commerce, see 9 U.S.C.A. § 1, and this Court has stated that `brokerage agreements' . . . fall within the broad construction of the term `involving commerce' . . . ." Carpenter, 139 N.C. App. 745, 749-50, 534 S.E.2d at 645 (quoting Smith Barney, Inc. v. Bardolph, 131 N.C. App. 810, 813, 509 S.E.2d 255, 257 (1998)). Our United States Supreme Court has "interpreted the term `involving commerce' in the FAA as the functional equivalent of the more familiar term `affecting commerce'words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." The Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56, 156 L. Ed. 2d 46, 51 (2003). Similarly, the contract between plaintiff and defendant regarding a corporate bank account "affect[s] commerce" and invokes application of the FAA. Id.
"The essential thrust of the Federal Arbitration Act, which is in accord with the law of our state, is to require the application of contract law to determine whether a particular arbitration agreement is enforceable; thereby placing arbitration agreements `upon the same footing as other contracts.'" Futrelle v. Duke Univ., 127 N.C. App. 244, 247-48, 488 S.E.2d 635, 638, disc. rev. denied, 347 N.C. 398, 494 S.E.2d 412 (1997) (quoting Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 687, 134 L. Ed. 2d 902, 909 (1996)).
In North Carolina, "the party seeking arbitration must show that the parties mutually agreed to arbitrate their disputes." Routh v. Snap-On Tools Corp., 108 N.C. App. 268, 271-72, 423 S.E.2d 791, 794 (1992) (citing Southern Spindle and Flyer Co., Inc. v. Milliken & Co., 53 N.C. App. 785, 281 S.E.2d 734 (1981), disc. rev. denied, 304 N.C. 729, 288 S.E.2d 381 (1982)). "It is essential that parties to an arbitration specify clearly the scope and terms of their agreement to arbitrate . . . ." Futrelle, 127 N.C. App. at 248, 488 S.E.2d at 638.
[A] valid contract arises only where the parties assent to the same thing in the same sense, and their minds . . . meet as to all the terms. Where there is no mutual agreement as to all of the terms, there is no contract. If a question arises concerning a party's assent to a written instrument, the court must first examine the written instrument to ascertain the intention of the parties.
Sciolino, 149 N.C. App. at 645-46, 562 S.E.2d at 66 (internal citations and quotations omitted).
Defendant failed to except or assign error to any of the trial court's findings of fact. "Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal." Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). Our review is limited to whether the trial court's findings of fact support its conclusions that the parties did not enter into a binding arbitration agreement. Id.
The trial court found:
3. Defendant never delivered to plaintiff a copy of the Commercial Bank Services Agreement until after the commencement of this action.
4. Plaintiff was not aware that he was supposed to have been provided with any brochure or that any brochure which he was supposed to have received, contained any agreement, particularly an agreement concerning arbitration.
Without objection or an assignment of error, our standard of review precludes this Court from reviewing whether these findings of fact are supported by the evidence.
The trial court's findings of fact are similar to the evidence presented before the trial court in Sciolino. 149 N.C. App. at646, 562 S.E.2d at 66. In Sciolino, we affirmed the trial court's denial of defendant's motion to compel arbitration. Id. Although defendants produced two separate customer agreements, neither was attached to the application signed by the plaintiffs and neither showed plaintiffs' signatures. Id. We held, "[i]n light of the lack of evidence presented by defendants in support of their contention that plaintiffs agreed to arbitrate their claim, we hold that the trial court properly concluded that defendants failed to demonstrate that there was a valid agreement to arbitrate." Id.
Here, the trial court's order found that defendant failed to establish that plaintiff agreed to arbitration when he signed the Commercial Bank Services Agreement. These findings are binding on this Court. See Koufman, 330 N.C. at 97, 408 S.E.2d at 731. The trial court concluded, "There was no mutual assent between plaintiff and defendant . . . that disputes be submitted to arbitration;" and no valid agreement to arbitrate disputes existed between the parties. Following the reasoning in Sciolino, this assignment of error is overruled.

IV. Conclusion
We recognize, "[s]trong public policy favoring settlement of disputes by arbitration requires us to resolve any doubts concerning the scope of arbitrable issues in favor of arbitration." Servomation Corp. v. Hickory Construction Co., 316 N.C. 543, 546, 342 S.E.2d 853, 855 (1986). This Court is limited by our standard of review as defendant failed to except to any of the trial court's findings of fact. See Koufman, 330 N.C. at 97, 408 S.E.2d at 731. The trial court's findings of fact show that plaintiff neither received nor agreed to arbitrate any claims against defendant. These findings of fact support the trial court's conclusions of law that the parties did not enter a binding arbitration agreement. The trial court's order is affirmed.
Affirmed.
Judges BRYANT and STEELMAN concur.
Report per Rule 30(e).