IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-320

Filed 2 April 2025

Mecklenburg County, No. 23 CVS 9269

BILFINGER INC., Plaintiff,

v.

CARGILL, INCORPORATED, Defendant.

Appeal by Defendant from Order entered 29 November 2023 by Judge George C. Bell in Mecklenburg County Superior Court. Heard in the Court of Appeals 23 October 2024.

*Bell, Davis & Pitt, P.A., by Joshua B. Durham and Edward B. Davis; Eversheds Sutherland (US) LLP, by Lee C. Davis, pro hac vice, and Tracey K. Ledbetter, pro hac vice, for plaintiff-appellee.*

*Robinson, Bradshaw & Hinson, P.A., by Edward F. Hennessey, IV; Faegre Drinker Biddle & Reath LLP, by Aaron Van Oort, pro hac vice, for defendant-appellant.*

HAMPSON, Judge.

**Factual and Procedural Background**

Cargill, Incorporated (Defendant) appeals from an Order denying its Motion to Compel Arbitration and granting Bilfinger Inc.'s (Plaintiff) Motions to Stay Arbitration and to Supplement the Record entered on 29 November 2023. The Record before us tends to reflect the following:

Defendant owns facilities across the country, including a facility located in Charlotte, North Carolina. At the Charlotte facility, Defendant refines, packages,

and ships edible vegetable oil and shortening products. Plaintiff is an international contractor and construction company. On or about 26 March 2021, Plaintiff contracted with Defendant to provide mechanical and piping services on Defendant's projects throughout the country. The parties executed a Master Services Agreement (MSA), the general contract framework for all projects entered into between the parties. For individual projects over $250,000, the parties agreed to supplement the MSA with project-specific contracts. The MSA provides that if a project-specific contract addresses a topic addressed by the MSA, the MSA will render those terms null and void:

> 7(d). . . . Notwithstanding any terms in the [project-specific contract] documents, to the extent that a topic is addressed or a remedy is provided for in this Agreement, corresponding terms or remedies set forth in the [project-specific contract] documents are null and void and of no [e]ffect as to the rights or obligations of either [Defendant] or [Plaintiff]. To the extent that a topic is not addressed or a remedy is not provided for in this Agreement, then the terms of the [project-specific contract] shall control for that specific topic or remedy.

Plaintiff began a project at Defendant's Charlotte facility to construct two new hydrogenation towers and expand its processing operations. The contract price for the project exceeded $250,000, so the parties entered into a project-specific agreement to supplement the MSA; the project-specific agreement expressly incorporates by reference another document, the "General Conditions" of the agreement (collectively, Construction Contract). Both the MSA and the Construction Contract contain sections titled "Dispute Resolution", which discuss the procedures to be undertaken

in the event a dispute arises between the parties. Under MSA Section 26, if a dispute arises, the parties must first attempt to resolve it by reporting it in writing to senior management representatives. If senior management does not resolve the dispute within twenty days of receiving notice, then the parties may agree to mediate the dispute, but "regardless whether mediation has occurred, either party may pursue court action":

> 26(b). After [twenty days] and upon mutual agreement of the parties, either party may submit the Dispute to a third party mediator recognized in the field of alternative dispute resolution, and acceptable to the other party. The mediation will be non-binding, and occur at a time and place acceptable to both parties with each party bearing its respective costs. After [twenty days], regardless whether mediation has occurred, either party may pursue court action pursuant to the requirements and limitations set forth in this Agreement. Notwithstanding any other provision of this Agreement, each Party is entitled to immediate access to the courts to: (i) toll any statute of limitation or (ii) seek appropriate injunctive relief or other equitable remedy if, in such party's sole discretion, such action is deemed necessary to avoid irreparable damage or preserve the status quo.

By contrast, under Article 16 of the Construction Contract, "[a]ll claims arising out of the Contract Documents shall be subject to arbitration[.]"

Indeed, disputes eventually arose between the parties. The parties referred the disputes to senior management, as contemplated by the MSA. Senior management did not resolve the disputes within twenty days. In accordance with MSA Section 26, Plaintiff brought an action against Defendant in Mecklenburg County Superior Court on 26 May 2023, alleging a claim for Breach of Contract and

seeking foreclosure of a mechanic's lien. On 24 July 2023, Defendant filed a Demand for Arbitration with the American Arbitration Association. On 26 July 2023, Defendant filed Motions to Compel Arbitration and Stay Judicial Proceedings, relying on the arbitration clause contained in Article 16 of the Construction Contract. Plaintiff filed a Cross-Motion to Stay Arbitration on 5 September 2023. The Motions were heard before the trial court on 12 September 2023. The same day, Plaintiff filed a Motion to Supplement the Record with an additional affidavit (Second Affidavit), which it had served on Defendant the night prior.

On 29 November 2023, the trial court denied Defendant's Motion to Compel Arbitration and granted Plaintiff's Motion to Supplement the Record and Motion to Stay Arbitration. On 12 December 2023, Defendant timely filed Notice of Appeal.

## **Appellate Jurisdiction**

"[A]n appeal from the trial court's denial of a motion to compel arbitration is an interlocutory order." *U.S. Trust Co., N.A. v. Stanford Grp. Co.*, 199 N.C. App. 287, 289, 681 S.E.2d 512, 513 (2009) (citation omitted). Generally, "a party has 'no right of immediate appeal from interlocutory orders and judgments.'" *Bartels v. Franklin Operations, LLC*, 288 N.C. App. 193, 195, 885 S.E.2d 357, 359 (2023) (quoting *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990)). However, "'an order denying arbitration, although interlocutory, is immediately appealable because it involves a substantial right which might be lost if appeal is delayed.'" *Brown v. Centex Homes*, 171 N.C. App. 741, 743, 615 S.E.2d 86, 87 (2005)

(quoting *Prime S. Homes, Inc. v. Byrd*, 102 N.C. App. 255, 258, 401 S.E.2d 822, 825 (1991)); N.C. Gen. Stat. § 7A-27(b)(3)(a) (2023) (appeal lies of right directly to the Court of Appeals from any interlocutory order or judgment of a superior court in a civil action or proceeding which affects a substantial right); N.C. Gen. Stat. § 1-569.28(a)(1) (2023) (appeal may be taken from an order denying a motion to compel arbitration).

However, we have also held that where no arbitration agreement is found to exist, the interlocutory appeal does not affect a substantial right and is subject to dismissal.[1]  *See JRM, Inc. v. HJH Companies, Inc.*, 287 N.C. App. 592, 598, 883

---

[1] Our dissenting colleague—who authored *JRM, Inc.*—now takes issue with the approach that case requires us to employ.  Indeed, prior to *JRM, Inc.*, we have also simply affirmed in other similar instances.  *See, e.g.*, *Register v. Wrightsville Health Holdings, LLC*, 271 N.C. App. 257, 843 S.E.2d 464 (2020) (affirming trial court's denial of motion to compel arbitration); *Sciolino v. TD Waterhouse Investor Servs., Inc.*, 149 N.C. App. 642, 562 S.E.2d 64 (2002) (same); *Kennedy v. Branch Banking & Trust Co.*, 165 N.C. App. 275, 600 S.E.2d 520 (2004) (unpublished) (same).

Under N.C. Gen. Stat. § 1-569.6(b) (2023), "[t]he court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate."  On the motion of a person showing an agreement to arbitrate, the court shall order the parties to arbitrate unless it finds there is no *enforceable* agreement to arbitrate.  N.C. Gen. Stat. § 1-569.7(a)(2) (2023) (emphasis added).  Previously, our statute governing proceedings on a motion to compel or stay arbitration considered whether the party opposing the motion to compel arbitration denied the *existence* of an agreement to arbitrate.  *See* N.C. Gen. Stat. § 1-567.3 (repealed 2004) (emphasis added).

Thus, the language surrounding whether an arbitration agreement "exists" when reviewing a motion to compel or stay arbitration appears to be an artifact of caselaw applying old statutory language.  *See e.g.*, *Sciolino*, 149 N.C. App. at 645, 562 S.E.2d at 66 ("When a party disputes the existence of a valid arbitration agreement, the trial judge must determine whether an agreement to arbitrate exists." (citing N.C. Gen. Stat. § 1-567.3(a) (1999) (repealed 2004)); *Slaughter v. Swicegood*, 162 N.C. App. 457, 461, 591 S.E.2d 577, 580 (2004) (citing N.C. Gen. Stat. § 1-567.3 (2001) (repealed 2004)); *Evangelistic Outreach Ctr. v. Gen. Steel Corp.*, 181 N.C. App. 723, 726, 640 S.E.2d 840, 843 (2007) ("If a party claims that a dispute is covered by an agreement to arbitrate but the adverse party denies the existence of an arbitration agreement, the trial court shall determine whether an agreement exists." (quoting *Slaughter*, 162 N.C. App. at 461, 591 S.E.2d at 580)).

Where the existence of an arbitration agreement is solely at issue, such as in *JRM, Inc.*, the proper approach may be to treat the appeal as interlocutory and determine whether the appeal should

S.E.2d 217, 221 (2023). Here, the trial court concluded there was no agreement to arbitrate because any arbitration agreement was null and void. Thus, if a valid agreement to arbitrate does not exist, Defendant has failed to show a substantial right is affected and this Court lacks jurisdiction to review the trial court's interlocutory order denying Defendant's motion to compel arbitration. *See id.*

## Issues

The issues on appeal are whether the trial court: (I) abused its discretion by admitting Plaintiff's Second Affidavit; and (II) properly denied the Motion to Compel Arbitration on the basis there was no agreement to arbitrate between the parties because the MSA rendered the alleged arbitration clause null and void.

## Analysis

I.    Admission of Second Affidavit

As a threshold matter, Defendant contends the trial court erred by granting Plaintiff's Motion to Supplement the Record and admitting the Second Affidavit. This Court reviews a trial court's ruling on an untimely affidavit for abuse of discretion.

---

be dismissed or not based on a review of the merits. *See* 287 N.C. App. at 597-98, 883 S.E.2d at 220-21. Where the enforceability of an existing arbitration agreement is at issue, however, the more appropriate approach may be to accept the matter as involving a substantial right and decide the case squarely on the merits. *See Pressler v. Duke Univ.*, 199 N.C. App. 586, 685 S.E.2d 6 (2009). *See also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 628-29, 129 S. Ct. 1896, 1900-01, 173 L.Ed.2d 832 (2009) (holding the underlying merits of an appeal from an order denying a stay pending arbitration are irrelevant in determining whether an appellate court has jurisdiction over the appeal).

Nonetheless, where a panel of the Court of Appeals has decided the issue, albeit in a different case, we are bound by that precedent. *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). As such, we faithfully apply *JRM, Inc.'s* rubric to this matter. Moreover, the effect of the mandate is the same: in the absence of an agreement to arbitrate, the trial court's order denying arbitration will be upheld and the appeal dismissed as interlocutory.

*Lane v. Winn-Dixie Charlotte, Inc.*, 169 N.C. App. 180, 184, 609 S.E.2d 456, 458-59 (2005).

Rule 6(d) of the North Carolina Rules of Civil Procedure generally requires affidavits in support of a motion be served with the motion and—unless otherwise provided—affidavits in opposition to a motion be served at least two days before the hearing on the motion. N.C. Gen. Stat. § 1A-1, Rule 6(d) (2023). However, even "[i]f the opposing affidavit is not served on the other parties at least two days before the hearing on the motion, the court may continue the matter for a reasonable period to allow the responding party to prepare a response, proceed with the matter without considering the untimely served affidavit, or take such other action as the ends of justice require." *Id.*

Here, Plaintiff served the Second Affidavit on Defendant less than two days before the hearing on the Motion to Compel Arbitration. Nonetheless, the trial court, in its discretion, accepted the Second Affidavit as part of the Record. Specifically, the trial court noted the Second Affidavit was submitted in response to an argument first raised by Defendant in its memorandum opposing Plaintiff's Motion to Stay Arbitration.

In particular, the trial court relied on the Second Affidavit solely for determining the purpose of the MSA's preemption clause and to find—counter to Defendant's argument—the parties did not specifically negotiate any of the terms in Article 16 of the Construction Contract:

7. Section 7(d) of the MSA provides that "to the extent that a *topic* is addressed or a remedy is provided for in this Agreement [the MSA], corresponding terms or remedies set forth in the [Construction Contract] are null and void and of no affect as to the rights or obligations of either [Defendant] or [Plaintiff]" . . . The purpose of this language was to spare the parties the effort of reviewing the lengthy form contracts to determine each and every way that some clause might cover the same topic already addressed by and agreed to in the MSA. ([Second Affidavit], filed on September 11, 2023 . . . at ¶¶ 3-5.)

. . . .

10. The parties did not specifically negotiate any of the terms in Article 16 of the general conditions of the [Construction Contract]. ([Second Affidavit] at ¶¶ 4-5.)

There is no indication the trial court relied on the Second Affidavit in specifically concluding MSA Section 7(d) rendered Article 16 of the Construction Contract null and void. To the contrary, the trial court concluded the MSA rendered the Construction Contract's Dispute Resolution provisions null and void by its own terms, reasoning that because MSA Section 26 and Article 16 of the Construction Contract cover the "exact same" topic, the terms contained in the Construction Contract are null and void.

Thus, the trial court's consideration of the late-filed affidavit was solely supplemental in purpose and used to rebut an argument newly raised by Defendant in Defendant's own opposition to Plaintiff's motion. *See Rolling Fashion Mart, Inc. v. Mainor*, 80 N.C. App. 213, 216, 341 S.E.2d 61, 63 (1986) (no abuse of discretion in admitting untimely affidavit where "affidavit was clearly supplemental in that it did

no more than explain the transactions referred to in the earlier affidavits filed by the parties and provide copies of the documents involved in those transactions."). Therefore, Defendant has not demonstrated any abuse of discretion by the trial court in admitting and considering the Second Affidavit. *See Lane*, 169 N.C. App. at 184-85, 609 S.E.2d at 458-59 (finding trial court did not err in allowing affidavit to be admitted after motion was filed where "[p]laintiffs have failed to show abuse of discretion in the trial court's decision to deny plaintiffs' request to strike [the] affidavit."). Consequently, the trial court did not commit reversible error in allowing Plaintiff to supplement the Record with the Second Affidavit.

II.     Motion to Compel Arbitration

Defendant contends the trial court erred in concluding there was no valid agreement to arbitrate. Under N.C. Gen. Stat. § 1-569.7 (2023),

> (a) On motion of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement:
>
> . . . .
>
> (2) If the refusing party opposes the motion, the court shall proceed summarily to decide the issue and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate.

This Court has elaborated "the trial court must perform a two-step analysis requiring the trial court to ascertain both (1) whether the parties had a valid agreement to arbitrate, and also (2) whether the specific dispute falls within the

substantive scope of that agreement." *U.S. Trust Co., N.A.*, 199 N.C. App. at 290, 681 S.E.2d at 514 (citation and quotation marks omitted). " '[T]he trial court's findings regarding the existence of an arbitration agreement are conclusive on appeal where supported by competent evidence, even where the evidence might have supported findings to the contrary.' " *Ellis-Don Constr., Inc. v. HNTB Corp.*, 169 N.C. App. 630, 633-34, 610 S.E.2d 293, 296 (2005) (citations omitted). We review the trial court's conclusions of law de novo. *Hager v. Smithfield E. Health Holdings, LLC*, 264 N.C. App. 350, 354-55, 826 S.E.2d 567, 571 (2019) (citation omitted).

The parties do not contest that "to the extent that a topic is addressed or a remedy is provided for" in the MSA, it renders corresponding contents in the Construction Contract null and void. The parties disagree, however, as to what the language "to the extent" contemplates in this context. Defendant argues MSA Section 26 "did not prescribe terms for arbitration" and thus "addressed dispute resolution only to the extent it involved senior management, mediation by mutual agreement, and access to the courts for the limited purpose of tolling the statute of limitations and to avoid irreparable damage or preserve the status quo[.]" In other words, Defendant contends, because the MSA does not expressly say anything about arbitration, it does not "address" arbitration and thus does not render Article 16 of the Construction Contract null and void. Consequently, according to Defendant, Article 16 of the Construction Contract requires the parties to arbitrate their dispute.

The MSA provides

[n]otwithstanding any terms in the [Construction Contract] documents, to the extent that a topic is addressed or a remedy is provided for in this Agreement, corresponding terms or remedies set forth in the [Construction Contract] documents are null and void and of no [e]ffect as to the rights or obligations of either [Defendant] or [Plaintiff].

The MSA also provides "[t]o the extent that a topic is *not* addressed or a remedy is not provided for in [the MSA]," then the terms of the Construction Contract shall control on that specific topic or remedy (emphasis added). Both the MSA and the Construction Contract contain sections with the heading "Dispute Resolution". Within those sections, each discusses the procedures for resolving a dispute, with the MSA allowing for court action and the Construction Contract requiring all disputes to be arbitrated.

In denying Defendant's Motion to Compel Arbitration, the trial court concluded:

> 5. Section 7(d) of the MSA provides that "to the extent that a *topic* is addressed *or* a remedy is provided for in this Agreement [the MSA], corresponding terms or remedies set forth in the [Construction Contract] documents are *null and void and of no [e]ffect* as to the rights or obligations of either [Defendant] or [Plaintiff]." (Emphasis added). Thus, the parties agreed in advance that if the MSA and the [Construction Contract] cover the same topic, the provisions of the MSA apply and the provisions of the [Construction Contract] are "null and void and of no [e]ffect."
>
> 6. Because MSA § 26 and [the Construction Contract] § 16 cover the exact same "topic" of dispute resolution, the terms of the [Construction Contract] on the topic of dispute resolution are "null and void" under the MSA.

- 11 -

7. The dispute resolution section of the [Construction Contract] General Conditions, including the delegation clause, therefore never governed the rights or obligations of [Plaintiff] or [Defendant] (on the topic of Dispute Resolution), the parties never agreed to arbitration as a matter of the plain language of the contracts, and the parties never agreed that the arbitrator would decide arbitrability.

(emphasis in original). In support of these conclusions, the trial court made specific findings, including the following:

7. Section 7(d) of the MSA provides that "to the extent that a *topic* is addressed *or* a remedy is provided for in this Agreement [the MSA], corresponding terms or remedies set forth in the [Construction Contract] are *null and void and of no [e]ffect* as to the rights or obligations of either [Defendant] or [Plaintiff]" . . . .

8. The MSA contains a section on the topic of (and is specifically titled) "Dispute Resolution," which provides that disputes will be resolved first by negotiation among senior management representatives of the parties; thereafter, "either party may pursue court action." (MSA § 26.)

9. The general conditions to the [Construction Contract] also contain a section on the topic of (and specifically titled) "Dispute Resolution" which states that the parties will resolve disputes through arbitration ([Construction Contract], General Conditions § 16.)

(emphasis in original). These findings accurately recite the relevant provisions of each agreement and are, therefore, supported by the evidence.

Defendant argues "having the same heading or touching the same topic is not enough to prompt preemption under Section 7(d)." However, as the trial court found, not only do the agreements share headings on the same topic, but the substantive provisions under each heading also address what the parties are to do in the event a

dispute arises between them.

Defendant further contends the parties agreed the MSA would preempt overlapping "contradictory" terms in the Construction Contract and only to the extent the MSA prescribed those terms. Defendant urges us to read the MSA and the Construction Contract "harmoniously," such that the terms of the agreements do not overlap, giving effect to the provisions of both agreements. Defendant argues the agreements should be interpreted together, such that any dispute between the parties must first be submitted to senior management in accordance with MSA Section 26, then either party may seek to resolve the dispute through mediation—also in accordance with MSA Section 26; absent mutual agreement to mediate the dispute, it shall be subject to arbitration in accordance with Article 16 of the Construction Contract—and a party may only immediately pursue court action in order to toll the statutes of limitations or seek injunctive or equitable relief pursuant to MSA Section 26.

It is true, this Court should interpret contracts "in a manner that gives effect to all of its provisions, if the court is reasonably able to do so." *Johnston Cty. v. R.N. Rouse & Co., Inc.*, 331 N.C. 88, 94, 414 S.E.2d 30, 34 (1992) (citation omitted). However, we also must interpret a contract by its plain language when possible. *See Internet East, Inc. v. Duro Communications, Inc.*, 146 N.C. App. 401, 405, 553 S.E.2d 84, 87 (2001) ("Where the terms of a contractual agreement are clear and unambiguous, the courts cannot rewrite the plain meaning of the contract."). *See also*

*Morrell v. Hardin Creek, Inc.*, 371 N.C. 672, 686, 821 S.E.2d 360, 369 (2018) (the Court must "enforce the parties' intent as evidenced by the clear and explicit language of the [contract]").

Here, the language of the MSA states: to the extent a topic is addressed or a remedy is provided for in the MSA, *corresponding* terms or remedies set forth in the Construction Contract are null and void and of no effect as to the rights or obligations of either Plaintiff or Defendant. The trial court concluded the same:

> 8. It is not necessary for the Court to determine whether the MSA and [the Construction Contract] dispute resolution provisions conflict because the MSA explicitly states that where a "topic" or "remedy" is addressed in the MSA, then a corresponding topic or remedy in the [Construction Contract] is null and void.

Indeed, MSA Section 7(d) contemplates there may be overlap of topics or remedies in subsequent project-specific agreements such as the Construction Contract—and provides that in such instances, the terms contained in the MSA should control. Moreover, we may not "creatively interpret the parties' actual . . . agreement in the manner urged . . . and must instead enforce the parties' intent as evidenced by the clear and explicit language of the" MSA—that the MSA renders any corresponding terms in the Construction Contract null and void. *Morrell*, 371 N.C. at 686, 821 S.E.2d at 369.

Further, the cases cited by Defendant for its argument a contract should be construed in a manner that gives full effect to all provisions are distinguishable from the facts before us. *See R.N. Rouse & Co., Inc.*, 331 N.C. at 90, 414 S.E.2d at 32

(contract stated "in the event of any *conflicting* statements or requirements" between two agreements, the subsequent agreement would control (emphasis added) (quotation marks omitted)); *Internet East, Inc.*, 146 N.C. App. at 405-06, 553 S.E.2d at 87 (agreement compelled arbitration "[u]nless the parties shall agree otherwise"); *In re Hall*, 210 N.C. App. 409, 415, 708 S.E.2d 174, 178 (2011) (construing two agreements in a harmonious manner where neither agreement provided for control over the other); *Lowder, Inc. v. Highway Comm.*, 26 N.C. App. 622, 642, 217 S.E.2d 682, 695 (1975) (contract contained "no indication" one clause was to "override" the other), *cert. denied*, 288 N.C. 393, 218 S.E.2d 467 (1975). Indeed, none of these cases concern an agreement which purported to have a voiding effect on corresponding terms and remedies in other agreements.

The dissent places heavy emphasis on the language in MSA Section 26(b) stating "Notwithstanding any other provision of [the MSA], each Party is entitled to immediate access to the courts to: (i) toll any statute of limitation or (ii) seek appropriate injunctive relief or other equitable remedy if, in such party's sole discretion, such action is deemed necessary to avoid irreparable damage or preserve the status quo."

Contrary to the dissent's assertion, our interpretation of the MSA and Construction Contract gives consistent effect to this provision. Section 26(a) requires the parties to first refer "[a]ny controversy or claim" to senior management by written request. Section 26(b) allows the parties—twenty days after referring the dispute to

senior management—to either mediate the dispute or pursue court action "pursuant to the requirements and limitations set forth in [the MSA]." Thus, read in the full context of the agreement, Section 26(b) allows the parties to immediately access the courts to toll any statute of limitation or seek injunctive or equitable relief without first submitting the dispute to management or pursuing mediation as prescribed in Section 26(a) and (b) if such action is "*deemed necessary to avoid irreparable damage or preserve the status quo.*" (emphasis added). In other words, the parties may immediately seek court action to preserve their rights while undertaking the dispute resolution process mandated by the MSA. Otherwise, the parties must follow the requirements and limitations set forth in the MSA and the remainder of Section 26— which Plaintiff has done here.

Here, MSA Section 7(d) expressly provides that to the extent the MSA addresses a topic, it renders corresponding terms or remedies set forth in the Construction Contract null and void. Thus, the Record supports the trial court's Findings that the MSA and the Construction Contract both contain sections titled "Dispute Resolution" and that MSA Section 26 provides specific terms for dispute resolution—expressly allowing for resolution in court—and Article 16 of the Construction Contract provides its own dispute resolution process—arbitration. These Findings, in turn, support the trial court's Conclusion that because MSA Section 26 and Article 16 of the Construction Contract "cover the exact same 'topic' ", Article 16 of the Construction Contract is null and void. Consequently, consistent

with *JRM, Inc.*, this appeal is interlocutory and does not affect a substantial right, subjecting it to dismissal. *See* 287 N.C. App. at 598, 883 S.E.2d at 221.

## Conclusion

Accordingly, for the foregoing reasons, Defendant's appeal from the trial court's Order Denying its Motion to Compel Arbitration is dismissed.

DISMISSED.

Judge FLOOD concurs.

Judge TYSON dissents by separate opinion.

TYSON, Judge, dissenting.

The majority's opinion wrongfully dismisses Defendant's immediately-available appeal of the trial court's denial of his motion to compel arbitration. The two clauses and remedies in the Master Service Agreement ("MSA") and the later and more specific Construction Contract are consistent and harmonious. The content and exclusions of the specific provisions read together reflect the intent and agreement of the parties. The paragraph headers are merely surplus and non-binding.

The MSA does not specifically exclude arbitration as an additional option and remedy to senior managements' meeting, mediation, and does not prevent the parties from resorting to the courts in the limited instances stated. The MSA provides:

> either party may pursue court action pursuant to the requirements and limitations set forth in this Agreement. *Notwithstanding any other provision of this Agreement, each Party is entitled to immediate access to the courts to: (i) toll any statute of limitation or (ii) seek appropriate injunctive relief or other equitable remedy if, in such party's sole discretion, such action is deemed necessary to avoid irreparable damage or preserve the status quo.* (emphasis supplied).

Resorting to the courts is expressly limited by and to the enumerated purposes stated in this "Notwithstanding" and overriding provision.

It makes perfect sense for the parties to expressly agree to a later and more specific individualized Construction Contract, in addition to the MSA, for capital projects over $250,000, as opposed to smaller or nickel and dime daily maintenance between the parties. An arbitration option is needed as a supplement to the informal

discussion between management and non-binding mediation for a prompt, final and binding decision. Much more is at stake for both parties on large projects. The delays inherent during litigation, while in the midst of large-scale projects, are intolerable for both parties.

This is a multi-million or multi-hundred-million dollar project. The project-specific Construction Contract is later in time, was specifically agreed to, and is in addition to, amends, and extends the MSA. The addition of arbitration as another procedure and remedy to resolve disputes does not usurp or conflict with any "topic" or provisions of the MSA. A more specific and later-in-time agreement takes priority and controls over an earlier and more general agreement. *See Wood-Hopkins Contracting Co. v. N.C. State Ports Auth.*, 284 N.C. 732, 738, 202 S.E.2d 473, 476 (1974) ("[W]hen general terms and specific statements are included in the same contract and there is a conflict, the general terms should give way to the specifics."). The presence of arbitration as a remedy to quickly resolve disputes in the project-specific Construction Contract, is binding and is entirely consistent with the parties' expressed intent in the later agreement.

The Federal Arbitration Act "was enacted in 1920 in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 179 L. Ed. 2d 742, 750 (2011) (citing *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581, 170 L.Ed.2d 254 (2008)).

The Federal Arbitration Act provides:

2

> A written provision in any maritime transaction or a
> contract evidencing a *transaction involving commerce* to
> settle by arbitration a controversy thereafter arising out of
> such contract or transaction . . . *shall be valid, irrevocable,
> and enforceable*, save upon such grounds as exist at law or
> in equity for the *revocation* of any contract.

9 U.S.C. § 2 (2024) (emphasis supplied).

The Supreme Court of the United States "described this provision as reflecting both a 'liberal federal policy favoring arbitration,' and the 'fundamental principle that arbitration is a matter of contract.'" *Id.* (internal citations omitted). Justice Scalia, writing for the majority of the Court held "courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms. *Id.* (internal citations omitted).

The trial court erred in denying Defendant's motion to compel arbitration and the majority's opinion errs in dismissing Defendant's timely appeal. I respectfully dissent.

## I.    Background

An express agreement between the parties to arbitrate disputes, and the denial of that mechanism to resolve those disputes, triggers immediate review. To cease progress mid-point and languish in litigation purgatory will kill a large construction project quicker than anything else. Disputes over specific approvals, permits, time, materials, finance, completion, quality and delivery schedules demand prompt and final resolution. That is the reason Congress and our General Assembly and multiple

3

binding precedents provide enforcement and allow for interlocutory review of the denial of an expressly-agreed-to alternative dispute resolution.

The later and more specific Construction Contract meets all the elements of a valid express contract and should be enforced according to its terms. Neither Plaintiff, the trial court, nor the majority's opinion dispute the validity of the later Construction Contract. In fact, it is that very contract Plaintiff seeks to enforce in an unauthorized forum after Plaintiff had bargained for and agreed to arbitration to timely resolve disputes under that very agreement!

Plaintiff brought a purported action in Mecklenburg County Superior Court on 26 May 2023 against Defendant alleging a claim for Breach of Contract and seeking foreclosure of a mechanic's lien. Neither of Plaintiff's claims in the trial court seeks to "*toll any statute of limitation or (ii) seek appropriate injunctive relief*" under the MSA.

Defendant timely filed a Demand for Arbitration with the American Arbitration Association on 24 July 2023. Defendant also filed Motions to Compel Arbitration and to Stay Judicial Proceedings on 26 July 2023, relying upon the arbitration clause contained in Article 16 of the Construction Contract. Plaintiff filed a Cross-Motion to Stay Arbitration on 1 September 2023. The Motions were heard before the trial court on 12 September 2023. The trial court denied Defendant's Motion to Compel Arbitration and granted Plaintiff's motion to Stay Arbitration on 28 November 2023. On 12 December 2023, Defendant timely filed Notice of Appeal.

4

## II. Standard of Review

Federal and North Carolina statutes and precedents strongly encourage arbitration as an agreed-upon and alternative means for parties to resolve their disputes. Courts have held to enforce this principle, it is "well established that an order denying a motion to compel arbitration is immediately appealable." *Cornelius v. Lipscomb*, 224 N.C. App. 14, 16, 734 S.E.2d 870, 871 (2012) (citing *Edwards v. Taylor*, 182 N.C. App. 722, 724, 643 S.E.2d 51, 53 (2007)); *U.S. Trust Co., N.A. v. Stanford Grp. Co.*, 199 N.C. App. 287, 289, 681 S.E.2d 512, 513 (2009) (citation omitted) ("[A]n appeal from the trial court's denial of a motion to compel arbitration is an interlocutory order."). The trial court's conclusions of law are reviewed *de novo* on appeal. *Hager v. Smithfield E. Health Holdings, LLC*, 264 N.C. App. 350, 354-55, 826 S.E.2d 567, 571 (2019)

## III. Analysis

### A. N.C. Gen. Stat. § 1-569.7(a)(2)

N.C. Gen. Stat. § 1-569.7(a)(2) (2023) provides:

> (a) On motion of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement:
>
> . . . .
>
> (2) If the refusing party opposes the motion, the court shall proceed summarily to decide the issue and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate.

The trial court must perform a two-step analysis "to ascertain both: (1) whether

the parties had a valid agreement to arbitrate; and also, (2) whether the specific dispute falls within the substantive scope of that agreement." *U.S. Trust Co., N.A.,* 199 N.C. App. at 290, 681 S.E.2d at 514.

Defendant argues MSA Section 26 "did not prescribe [nor proscribe] terms for arbitration," did not expressly prohibit it as a procedure or remedy, and "addressed dispute resolution only to the extent it involved senior management, mediation by mutual agreement, and access to the courts for the limited purpose of tolling the statute of limitations and to avoid irreparable damage or preserve the status quo[.]" Defendant correctly asserts the MSA does not expressly contain anything about arbitration, does not "address" arbitration, and does not exclude or render Article 16 of the Construction Contract null and void.

## B. Standards of Interpretation

The Construction Contract is a separate, distinct, specific, and more recent contract between the parties, which contains all essential elements of a valid express agreement. *Wood-Hopkins Contracting Co.,* 284 N.C. at 738, 202 S.E.2d at 476. Article 16 requires the parties to arbitrate resolution of their disputes on these larger-scale construction projects.

Defendant correctly argues the MSA and the Construction Contract must be read "harmoniously," where a procedure or remedy is not mentioned nor prohibited by the MSA, and the court is required to give effect to the provisions of both agreements. Agreements between the parties must be interpreted together, any

dispute between the parties must first be submitted to senior management in accordance with MSA Section 26, then either party may seek to resolve the dispute through non-binding mediation, also in accordance with MSA Section 26. Absent mutual agreement to mediate, the dispute shall be subjected to arbitration in accordance with Article 16 of the Construction Contract.

The trial court and the majority's opinion failed to recognize or give effect to the parties' express agreement that, "*Notwithstanding any other provision of this Agreement,*" a party may only immediately pursue court action in order "to toll the statutes of limitations or to seek injunctive or equitable relief" pursuant to MSA Section 26.

Trial and appellate courts must "enforce the parties' intent as evidenced by the clear and explicit language of the agreement(s)." *Morrell v. Hardin Creek, Inc.*, 371 N.C. 672, 686, 821 S.E.2d 360, 369 (2018). "Where the terms of a contractual agreement are clear and unambiguous, the courts cannot rewrite the plain meaning of the contract." *Internet East, Inc. v. Duro Commc'ns, Inc.*, 146 N.C. App. 401, 405, 553 S.E.2d 84, 87 (2001) (internal citation omitted). The agreements must be reviewed and enforced "in a manner that gives effect to all of its provisions, if the court is reasonably able to do so." *Johnston Cty. v. R.N. Rouse & Co., Inc.*, 331 N.C. 88, 94, 414 S.E.2d 30, 34 (1992) (internal citation omitted).

## C. JRM, Inc. v. HJH Companies, Inc

There is no finding nor conclusion the terms of either contract are ambiguous.

7

The majority's opinion further compounds this error by relying upon *JRM, Inc. v. HJH Companies, Inc.*, 287 N.C. App. 592, 598, 883 S.E.2d 217, 221 (2023). This Court dismissed the appeal because no valid arbitration agreement existed, and no substantial right was affected. This reliance is contrary to the express and plain language of the admittedly-valid Construction Contract, not the MSA, which Plaintiff specifically seeks to enforce, not in arbitration, as contractually required, but in the trial court. Resorting to the trial court for breach is specifically prohibited in the MSA, except as specifically allowed therein.

The trial court erroneously concluded as a matter of law, "It is not necessary for the Court to determine whether the MSA and [the Construction Contract] dispute resolution provisions conflict because the MSA explicitly states that where a 'topic' or 'remedy' is addressed in the MSA, then *a corresponding topic or remedy* in the [Construction Contract] is null and void."

The fallacy and prejudicial error therein is neither arbitration as a procedure, topic, nor remedy is mentioned at all in the MSA and is certainly not specifically excluded. Where the parties themselves later agreed to and adopted this procedure as an additional remedy to resolve disputes, it controls. *Wood-Hopkins Contracting Co.*, 284 N.C. at 738, 202 S.E.2d at 476.

MSA Section 7(d) also specifically provides. "To the extent that *a topic is not addressed or a remedy is not provided* for in this Agreement, then the *terms of the [project-specific contract] shall control for* that specific topic or remedy." (emphasis

8

supplied).  The trial court also made no findings or conclusions concerning Plaintiff wrongfully filing claims in court for breach of contract and to foreclose a lien in court, where those actions are also specifically excluded as a remedy in the MSA Section 7(d)  and are *specifically* prohibited by the agreement to arbitrate in the Construction Contract.  MSA Section 26 expressly limits the parties' access to the courts: "Notwithstanding any other provision of this Agreement, each Party is entitled to immediate access to the courts to: (i) toll any statute of limitation or (ii) seek appropriate injunctive relief or other equitable remedy if, in such party's sole discretion, such action is deemed necessary to avoid irreparable damage or preserve the status quo."

The trial court and the majority's opinion errs by giving primacy to a clause that "addresses a topic" as opposed to the MSA not mentioning a "topic" nor prohibiting a process or remedy.  The trial court and the majority's analysis also ignores the plain language of the MSA to expressly limit either parties' initial access to the courts under the circumstances specifically stated: *"each Party is entitled to immediate access to the courts to: (i) toll any statute of limitation or (ii) seek appropriate injunctive relief or other equitable remedy if, in such party's sole discretion, such action is deemed necessary to avoid irreparable damage or preserve the status quo."*  The topics and remedies in the contracts are simply not mutually exclusive.

Plaintiff's claims being asserted in court also directly violates this specified

provision in the MSA, a "Notwithstanding" provision that expressly overrides all others contained therein. The two agreements contain "no indication" one clause was to "override" or exclude the other contract provision, where a process and remedy was not specifically named or excluded, and where express limitations on filing suit for relief for disputes is available only through specifically agreed-upon arbitration. *See Lowder, Inc. v. Highway Comm.*, 26 N.C. App. 622, 642, 217 S.E.2d 682, 695 *cert. denied*, 288 N.C. 393, 218 S.E.2d 467 (1975).

The trial court and the majority's opinion prejudicially err in denying Defendant's motion to compel arbitration and to dismiss Defendant's timely appeal. The decision to dismiss Defendant's timely appeal is also contrary to the Supreme Court of the United States' holding in "Jurisdiction over the appeal, however, 'must be determined by focusing upon the category of the order appealed from, rather than the strength of the grounds for reversing the order.'" *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 628, 173 L.Ed.2d 832, 838 (2009) (citing *Behrens v. Pelletier*, 516 U.S. 299, 311, 133 L.Ed.2d 773 (1996)). In other words, even if a litigant actually has no right to arbitrate and a trial court so determines, the party is still entitled to an immediate appeal and review on that issue.

## IV. Admission of Untimely Second Affidavit

As I vote to address the merits of this timely interlocutory appeal and to reverse the trial court's denial of Defendant's motion to compel arbitration, I also address the trial court's error in admitting an untimely affidavit to supplement the

record. The trial court also granted Plaintiff's Motion to Supplement the Record with an additional untimely affidavit (Second Affidavit), which it had served on Defendant the night prior to hearing.

North Carolina Rules of Civil Procedure 6(d) requires affidavits in support of a motion to be served with the motion and, unless as otherwise provided, affidavits in opposition to a motion *must* be served at least two days prior to the hearing on the motion. N.C. Gen. Stat. § 1A-1, Rule 6(d) (2023).

Rule 6(d) further provides:

> If the opposing affidavit is not served on the other parties at least two days before the hearing on the motion, the court may continue the matter for a reasonable period to allow the responding party to prepare a response, proceed with the matter without considering the untimely served affidavit, or take such other action as the ends of justice require.

*Id.* There are no findings or conclusions to support or excuse Plaintiff's express violation of Rule 6(d). *Id.*

The trial court simply stated the Second Affidavit was submitted in purported response to an argument Defendant had raised in its memorandum opposing Plaintiff's Motion to Stay Arbitration. The order is devoid of any basis to deviate from the stated requirements of Rule 6(d), and it should have been excluded. *Id.*

## V.    Conclusion

The trial court committed reversible error in denying Defendant's motion to compel and allowing Plaintiff to supplement the Record with the untimely Second

11

Affidavit. The trial court's order is properly reversed and remanded for entry of an order allowing Defendant's motion to compel arbitration and to strike Plaintiff's untimely affidavit. The majority's dismissal of Defendant's timely appeal is also erroneous and prejudicial. I respectfully dissent.